## MEAD V. PETTIGREW.

1. A denial of all the "material allegations" in the complaint is insufficient as a general denial.

2. An agreement by the president of a bank with one who gives a note in return for stock in the bank, that he will not be required to pay anything on the note, is not binding on the bank, and does not release the maker.

3. Where attention is not called to an error in the amount of a judgment until appellants brief is filed, respondent will not be taxed with costs on a modification of the judgment.

(Opinion filed April 13, 1899.)

Appeal from circuit court, Hughes county. Hon. LOR-ING E. GAFFY, Judge.

Action by Corwin D. Mead, assignee of the First Bank of Ft. Pierre against Frederick W. Pettigrew, on a promissory note. Judgment for plaintiff, and defendant appeals. Modified.

The facts are stated in the opinion.

*Joseph Donahue* and *Dillon & Sutherland*, for appellant.

The First Bank could not be considered a *bona fide* purchaser, it being the same bank that took the note, but under a different organization and name. Eugene Steere, the person who procured this note, and who knew all the circumstances and the consideration, and that the note had been paid, was the president of the First National Bank, and the promoter, organizer and president of the First Bank, and his knowledge was the knowledge of the bank. Huron Printing & Bind. Co. v. Kittleson, 4 S. D. 520, 57 N. W. 233; Stebbins v. Lardner, 2 S. D. 128, 48 N. W. 847; Black Hills Nat. Bank v. Kellogg, 4 S. D. 312, 56 N. W. 1071, § 4666, Comp. Laws.

*Horner & Stewart*, for respondent.

The allegation that the defendant "denies each and every material allegation contained in said complaint except as hereinafter admitted", is a denial of nothing. The insertion of the word "material" renders it inoperative for any purpose. Lewis v. Coulter, 10 Oh. St. 452; Montour v. Purdy (Minn.) 88 Am. Dec. 88; Dole v. Burleigh, 1 Dak. 218; Edmunson v. Phillips, 73 Mo. 57.

Admitting that the answer pleads an agreement of Steere, as an officer of the bank, it was beyond the scope of his authority as such officer, and not binding on the bank. Thompson v. McKee, 5 Dak. 172, 37 N. W. 367; North Star Boot & Shoe Co. v. Stebbins, 2 S. D. 74; Morawetz Priv. Corporation, § 540; Bank v. Haskell, 51 N. H. 116; Bank v. Tisdale, 84 N. Y. 655; Bank v. Jones, 8 Pet. 6; Bank v. Dunn, 6 Pet. 20; Davis v. Randall, 115 Mass. 547; Morse, Banks and Baking, § 167.

HANEY, J.   Plaintiff states his cause of action as follows: "(1) That the First National Bank of Ft. Pierre, South Dakota, was on January 9, 1894, and for a long time prior thereto, and until October 1, 1894, a corporation organized and existing under the laws of the United States of America.   (2) That the First Bank of Ft. Pierre, South Dakota, was during all of the times hereinafter mentioned a corporation organized and existing under the laws of the State of South Dakota.   (3) That on January 9, 1894, at Ft. Pierre, South Dakota, the defendant, F. W. Pettigrew, by his promissory note, promised to pay to the order of the First National Bank of Ft. Pierre, South Dakota, one thousand dollars on January 9, 1895, after date, with interest thereon at the rate of 6 per cent. per annum from maturity until paid.   (4) That on or about the 1st day of October, 1894, the said First National Bank of Fort Pierre, South Dakota, sold and delivered said note to the First Bank of Ft. Pierre, South Dakota, for a valuable consideration; that thereafter, and before the maturity of said promissory note, and on or about the 12th day of December, 1894; the said First Bank of Ft. Pierre, South Dakota, made an assignment of all its property, for a valuable consideration, for the benefit of its creditors, to this plaintiff, and among the property so assigned was the promissory note described in paragragh 3 of this complaint.   (5) That this plaintiff is the owner and holder of said note, and that the defendant has not paid the same, nor any part thereof, and the same is due."   The only denial in the answer is stated thus:   "That he [the defendant] denies each and every material allegation in said complaint, except as hereinafter specifically admitted."   The authorities are conflicting concerning the effect of the word "material," when used

as above. 1 Enc. Pl. & Prac. 782; Dole v. Burleigh, 1 Dak. 218 46 N. W. 692, We think the denial is bad, and that every material fact alleged in the complaint must, for the purposes of this action, be taken as true. Comp. Laws, § 4933.

The affirmative defenses and evidence will be considered in connection with the ruling of the court upon plaintiff's motion to direct a verdict in his favor, which was granted. In October, 1894, the assets of the First National Bank of Ft. Pierre were transferred to the First Bank of Ft. Pierre. At that time Eugene Steere was president of the former bank, and had been such officer for about four years. Mr. Steere, testifying as a witness for defendant, states that the First National Bank went out of existence October 1, 1894, when the First Bank came into existence; that the stockholders of each were practically the same; that he was promoter and organizer of the First Bank; and that he had full knowledge in regard to the notes and liabilities derived from the former corporation. Concerning the note in suit, he says: "I first saw it when it was drawn, January 9, 1894. At the time the bank was started, in 1890, we had to have five directors in the bank, and we could have only three directors who had money enough as directors, as they each had to have $1,000 stock in the bank. So I got George Mathieson, and I have forgotton who the other was now, but I think it was Mr. Kleiner, to act as directors; and I took their notes, and issued them stock of $1,000, and put in the money myself, so they could act as directors, and still hold stock in the bank. Afterwards, I think, Mr. Kleiner went to Washington, and I got Mr. Pettigrew to take his place under the same. I took Mr. Pettigrew's note, and issued him the stock, and put in the money myself in the first place, and kept

it for several years, until this final note was taken,—I think, about that time. Mr. Pettigrew was connected with the bank. He was connected as director of the bank, and the bank held his note, and he held his stock. During this period dividends were declared by the bank, but none received by defendant. He did not receive any money, but he received stock of the bank. The stock was issued to balance the note. The stock was issued for the note. When defendant gave me this note, I had this agreement, that he would not be called upon to pay it. I was president of the First Bank of Ft. Pierre from the time of its organization until the time of the assignment. I carried Mr. Pettigrew's note which represented the stock for about three years, and the bank carried it for the rest of the time. I carried the $1,000 myself for about three and one-half years, and then the bank carried it and carried Mr. Pettigrew's note to represent the amount of money. Mr. Pettigrew got stock in the First National Bank in February, 1890, and the stock was issued to him at that time. When Mr. Pettigrew gave this $1,000 note to the First National Bank, it was to represent the $1,000 in money he had gotton from the bank for the stock held. He had the stock of the bank all the time the bank was in operation." Witness, on being shown Exhibit 2, and refreshing his recollection, testified that Mr. Pettigrew did not return his stock in the First National Bank of Fort Pierre, until after March 14, 1894, and that he held the stock on January 9, 1894, when he executed Exhibit A. (the note in suit), and that he returned the stock after March 14, 1894, and there was stock of the First Bank of Ft. Pierre issued to him in place of the stock in the First National Bank. Mr. Pettigrew acted as director in the First National Bank of Ft. Pierre, and took

part in its proceedings during all of the time the bank was in existence. Defendant on his own behalf, testified: "I did not receive any consideration for the note sued upon. Mr. Steere came to me in Fort Pierre one day, and said that he was in need of a director for the First National Bank, and wanted me to act as director; I told Mr. Steere that I had no money to go into the banking business. 'Why,' he says, 'you do not need money.' 'Well,' I says, 'I don't know how to go into the banking business without money.' 'Why,' he says, 'we will have to have some local directors, and our directors are all nonresidents, and it would be a great accomodation to me if you will act.' Then he suggested that I give him my note for $1,000, and that I could act as director. When I moved away from Ft. Pierre, I told Mr. Steere that I was going back to Sioux Falls and could be no longer of any service to him in the bank, and requested him to secure some other director, and release me from whatever obligation I might be under, and he requested that I should hold on a while; and in 1894, in answer to my various importunities, and at his request, this note was given to Mr. Steere, and he sent me the first note that was given. He requested me to return the stock in the First National Bank of Fort Pierre, which I did, about May 12, 1894. It was agreed between Mr. Steere and me that I should never be called upon to pay the note; that the note would not be held as any part of the assets of the bank, nor as an obligation; and the stock which I held I did not consider as mine, and I never received any dividends upon it, and never paid any interest upon the note. I was never called upon to pay any assessments, and never received any dividends upon the stock.

The foregoing statement is believed to be a fair summary of the material evidence, and taken with the facts established

by the pleadings, substantially presents the only defense attempted to be shown by defendant. Such defense has been stated as favorably to defendant as the record will permit. Upon the facts thus determined, did the circuit court err in directing a verdict for plaintiff? We think not. Plaintiff is certainly in no worse position than was the First National Bank. Steere testifies that defendant did not receive any money for the note, but he received stock of the bank. The stock was issued for the note. This stock was not returned until March 14, 1894. Defendant held it when the note in suit was executed, and when he returned it he received stock of the new bank. Steere says he carried defendant's note which represented the stock for about three years, and the bank carried it for the rest of the time. He further says, "I took Mr. Pettigrew's note, and issued him the stock, and put in the money myself in the first place, and kept it for several years, until this final note was taken." The only reasonable inference from all the evidence is that, when the new note was taken, Steere withdrew the amount of the note, and that thereafter the bank held it, and defendant continued to hold the stock. The stock was the consideration of the note, and when it was received by the bank the bank evidently parted with value. Under these circumstances, was Steere, as an officer of the bank, authorized to make an agreement with defendant that he should not be called upon to pay the note? It was properly held by the territorial supreme court "that officers of banks have not the power to excuse or limit the legal obligations of persons to the banks they represent, by agreeing with them that they shall not be held liable or called upon to pay the obligations which they make, either as principal debtors or accommoda-

tion makers or indorsers, and on the credit of which the bank has parted with its funds." Thompson v. McKee, 5 Dak. 172, 37 N. W. 367. This principle is applicable to the case at bar. The evidence discloses that the First National Bank parted with value when it obtained the note sued upon, and the complaint shows that the First Bank purchased it for a valuable consideration. We think Mr. Steere was not authorized to make the agreement mentioned in his testimony, and that the court below was right in directing a verdict for plaintiff. The result thus reached commends itself as being consistent with prudence and fair dealing. Men should not put promissory notes in circulation which they do not intend to pay. If the contract regarding defendant's bank stock was as he now claims it to have been, such contract should have been evidenced by a writing which truly expressed its terms, and not by an instrument of entirely different import. Defendant's want of ordinary prudence is alone responsible for any loss he may sustain by reason of his connection with these banking institutions.

It is conceded that the judgment exceeds by $60 the amount due when it was rendered. It should be reduced from $1,141 to $1,081. As attention was not called to this error in computation until appellant's brief was filed in this court, the modification will not affect respondent's costs or disbursements. The action is remanded, with directions to modify the judgment as indicated herein.