## LYON v. PLANKINTON BANK *et al.*

Plaintiff claimed land under sale on executions on judgments against D, and alleged that defendants unjustly claimed some interest therein. Defendants denied the complaint, and alleged, as new matter, that D formerly owned the land, and that he had conveyed it to defendants, and proved the execution of the deed. Plaintiff then gave evidence tending to show that the deed was intended to delay or defraud creditors. *Held*, that, under Comp. Laws, § 4933, providing that an allegation of new matter in the answer, not relating to a counterclaim, is to be deemed controverted by the plaintiff on a direct denial or avoidance, as the case may require, the issue of fraud was within the

pleadings, and it was error for the court to make no finding on that issue.

(Opinion filed March 1, 1902.)

Appeal from circuit court, Minnehaha county. HON. JOSEPH W. JONES, Judge.

Action by William H. Lyon against the Plankinton Bank and another. From a judgment for defendants, plaintiff appeals. Reversed.

*Davis, Lyon & Gates* and *Grigsby & Grigsby,* for appellants.

*A. B. Kittredge* and *E. R. Winans,* for respondents.

HANEY, P. J. It is alleged in the complaint in this action that the defendant bank is a corporation under the laws of Wisconsin; that on June 1, 1893, the defendant bank assigned all of its property for the benefit of its creditors to the defendant William Plankinton, who thereupon qualified and entered upon the discharge of his duties as assignee; that the plaintiff is the owner of certain realty in Minnehaha county; that defendants unjustly claim an estate or interest therein adverse to the plaintiff; that defendants' claim is without any right whatever; and that they have no estate, right, title, or interest in the described realty, or any part thereof. Defendants deny all the allegations of the complaint except the incorporation of the defendant bank and the receivership of the defendant William Plankinton, and allege that on May 24, 1893, F. T. Day, who was then the owner in fee of the land described in the complaint, conveyed the same (his wife joining) for a good and valuable consideration, to the defendant bank, by deed duly executed and acknowledged, and recorded in the office of the register of deeds of Minnehaha county; that afterwards, on June 1, 1893, the bank made an assignment, under the laws of Wisconsin, for the benefit of its creditors, to the defendant William Plankinton; that

the defendants are the owners in fee of the premises; and they demand that the complaint be dismissed, with costs. The action was tried by the court without a jury. It was admitted that on May 24, 1893, and prior thereto, the premises in controversy were owned by F. T. Day. The plaintiff proved that on June 2, 1893, one Melvin Grigsby commenced an action in his favor against Day, and on that day attached the premises; that on the same day he caused a notice of the pendency of his action to be recorded in Minnehaha county; that Grigsby recovered and docketed a judgment in such action for $21,128.94, on November 23, 1894; that execution was issued thereon, and the premises in controversy were sold thereunder on December 28, 1895; that such sale was duly confirmed; that a sheriff's certificate of sale issued to him was recorded January 27, 1896; that on January 27, 1896, such certificate was assigned to the plaintiff for $9,000; that a sheriff's deed was duly executed, acknowledged, and delivered to the plaintiff on December 30, 1896; and that such deed was recorded February 16, 1897. Defendants proved the execution of a deed absolute in form from Day and wife to the defendant bank, acknowledged May 24th, and recorded June 23, 1893, which, for the purposes of this appeal, will be regarded as describing the land in dispute. F. T. Day, called by the plaintiff in rebuttal, testified, without objection, as follows: "My residence is Milwaukee, Wis. The original of Exhibit 1 [the deed form Day to the bank] was executed by me. I received no money consideration for this deed. I got no consideration at the time the deed was executed. It was executed to secure notes that I had given the Plankinton bank. Q. What was said at the time as to the recording of the deed? A. That it was not to be recorded. Q. What was done with it? A. I don't know. I have never seen it since I executed it. Q. What did you do with it after ex-

ecuting it? A. It was taken to the board of directors of the bank. Q. What was the reason for this agreement not to record the deed? A. Because it would have ruined my credit. Q. How much other property did you transfer to the bank at that time by instruments similar to this one, or at about that time? A. There must have been about 25.000 acres of land. Q. Where was this land situated? A. In South Dakota, North Dakota, and Minnesota, except some in Wisconsin, possibly, but I rather think not—large quantities in these states. I estimated the value of these lands at about $300,000. A short time previous I deeded, under a similar instrument, a large tract in Milwaukee county, and also at the same time turned over some stock. In my judgment the value of the property in Milwaukee, both lands and stock, was $400,000, or nearly that. My indebtedness to the Plankinton bank at that time was about $150,000; it might have reached $175,000—somewhere around there as near as I remember. The Plankinton bank did not realize on any of these securities that I know of while I was president of the bank. The assignee afterwards received, as near as I can tell, about $70,000 or $80,000 from one piece of property. At the time I turned over this property to the bank my indebtedness to the bank, nor any part of it, was not receipted, canceled, nor extended. No portion of the debt was paid; it was left in its original condition. Q. What was the understanding or agreement, if any, at the time of the execution of these deeds, as to your handling or continuing to handle or dispose of the property that was conveyed by these deeds? A. I could go on disposing of the property just the same as before the instrument was executed. At the time I made these transfers to the bank, my liabilities to other creditors than the bank were about $150,000. The parties with whom I had these negotiations on the part of the bank were

familiar with my business affairs and general indebtedness, I think. It must have been June 1, 1893, that I made an assignment for the benefit of my creditors." Defendants read in rebuttal from the deposition of A. E. Fletcher, taken on their own behalf, as follows: "Q. What sort of an entry did the officers make on the books as to the credit Mr. Day should be allowed for this transfer of this property on the 24th of May? A. There was no entry made upon the books, because no transactions had taken place; no sales had been effected up to the time of the transfer. They were transferred as security for his entire indebtedness, whatever it might be. A greater portion of his indebtedness was represented by notes, a portion was in the shape of an overdraft, and these securities were given to cover whatever indebtedness he might have." None of this testimony concerning the execution of the deed from Day to the bank was contradicted. At the conclusion of the trial the plaintiff requested the court to make the following, among other, findings of fact: "(12) That it was agreed when these deeds [from Day to the bank] were executed that said Day should go on and handle and dispose of the lands described in the deeds the same as before the instruments were given; (13) that at the same time it was agreed that said deeds should not be recorded, for the reason that the recording of the deeds would ruin the credit of said Day; (14) that the aforesaid agreement, and the withholding of said deeds from record in pursuance thereof, was intended to hinder and delay the creditors of said Day, and was fraud upon them." This request was denied. The court found "that on May 24, 1893, the said Day was president of said bank, and was then justly indebted to said bank in a sum exceeding $175,000; that he executed and delivered said instrument, together with other deeds in like form, conveying large quantities of land for the purpose of securing the

payment of all his indebtedness to said bank, and for no other consideration; that said indebtedness, amounting to not less than $175,000, remains due and unpaid"; and concluded, as matters of law, "(1) that said instrument is a mortgage and a valid and subsisting lien upon said premises, securing the payment of said indebtedness; and such lien is superior to the right, title, and interest of the plaintiff in said premises; (2) that, subject to said lien, the plaintiff is the owner of said premises."

Anything out of the usual course of business is a sign of fraud. Taking an absolute deed as a security for money is a mark of fraud, for it is calculated to deceive creditors, and to make them believe that no part of the property is subject to their demands, when in fact it is otherwise. A deed not at first fraudulent may become so by being concealed, because by its concealment persons may be induced to give credit to the grantor. The omission to place a deed on record is an instance of concealment within the rule. Bump, Fraud. Conv. pp. 39, 41, 51. There was abundant evidence received without objection in this case of facts calculated to cast suspicion upon the conveyance relied upon by defendants, and the trial court should have found whether or not it was made with intent to delay or defraud creditors, provided that issue was within the pleadings. In Murphy v. Bank, 13 S. D. 501, 83 N. W. 575, where the pleadings were substantially the same as in the case at bar, this court made use of the following language: "It is further contended by the appellant that the mortgage is fraudulent as to creditors, but the question of fraud is not raised by the pleadings, nor was there any finding upon that subject; hence the question of fraud is not properly before us." Doubtless this language influenced the learned circuit court in deciding the present case. While satisfied with the decision in Murphy v. Bank in all other respects, we think it should not have

been assumed therein that the question of fraud was not raised by the pleadings. In that case, as in this, the answer contains no counterclaim. The new matter therein could be replied to only upon an order of the court made upon application of the defendants. Lumber Co. v. Keefe, 6 Dak. 160, 41 N. W. 743. The allegation of new matter in the answer, not relating to a counterclaim, is to be deemed controverted by the adverse party upon a direct denial or avoidance, as the case may require. Comp. Laws, § 4933. The new matter in this answer consists of two allegations: (1) That Day formerly owned the land in controversy, and (2) that he conveyed it to the defendant bank. Each of these allegations is to be deemed controverted by the plaintiff upon a direct denial or avoidance, as the case may require. It was agreed that Day formerly owned the land. Defendants proved the execution of his deed to the bank. It was then relevant and proper for the plaintiff to avoid the effect of the deed by offering testimony tending to prove that it was intended to delay or defraud creditors. As we have seen, such testimony was offered and received without objection. As it cast suspicion upon the transaction, it was the duty of the trial court to find upon the issue of fact thus presented. The court having failed to find upon this material issue of fact, after having been requested so to do, the judgment cannot be sustained. It is reversed and a new trial ordered.

FULLER, J. While concurring with my associates in the view that the judgment appealed from cannot be sustained for the reasons specified by Judge HANEY, I desire to mention another point fatal, in any event, to the claim of respondent, and which appears to render a new trial wholly unnecessary. In the quitclaim deed upon which the assignee of the Plankinton bank wholly relied at the

trial to establish his allegation of fee-simple ownership, the premises are described as being situated in the county of Minnehaha and state of Minnesota; but the court erroneously permitted counsel for respondent to show by parol testimony that the parties intended to incumber the South Dakota land described in the complaint. Now, had the name of the state been omitted, it might have been judicially known that there were no other sections, townships, and ranges in Minnehaha county, South Dakota, to which the descriptions contained in the deed are applicable; but, upon the face of the deed as written, no inconsistency appears. Without the assumption of unwarranted judicial knowledge, to the effect that there is not beyond the jurisdiction of our courts, in the state of Minnesota, a Minnehaha county in which is situated land owned by the grantor answering the description given, no ambiguity is perceptible, and the court was without authority to extend its inquiry beyond the terms of the deed, as to what was really intended. Abundant authority exists to support the proposition that state courts of record may take cognizance of the counties and boundaries of the state in which they sit, together with the location of its chief cities and incorporated towns; but judicial knowledge does not extend to such characteristics of another state, nor to the statutes, ordinances, or proceedings creating the same. Woodward v. Railroad Co., 21 Wis. 313; 17 Am. & Eng. Enc. Law (2d Ed.), 906, 941; U. S. v. Beebe, 2 Dak. 292, 11 N. W. 505; 2 Freem. Judgm. 571. In Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200, Mr. Justice SWAYNE, in speaking of the universal notoriety essential to matters of judicial notice, wisely proclaimed the following precautionary doctrine: "This power is to be exercised by the courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be

resolved promptly in the negative." Unless the action be to reform a written instrument, on the ground of fraud or mistake, it seems to be well settled that, in the absence of ambiguity, either patent or latent, parol evidence is inadmissible to give to such instrument a meaning other than that conveyed by the language employed. In Elofrson v. Lindsay (Wis.), 63 N. W. 89, the supreme court of Wisconsin say: "Where the description in a deed is free from ambiguity, parol evidence is not admissible to show that the premises in controversy were intended to be included therein. The proper remedy for the correction of a mistake in a deed is by suit in equity." The following cases are to the same effect: Pierson v. McCahill, 21 Cal. 122; Muldoon v. Deline, 135 N. Y. 150, 31 N. E. 1091; Clarke v. Lancaster; 11 Am. Rep. 486; Clark v. Baird, 9 N. Y. 183; Rowland v. McCown, 20 Or. 538, 26 Pac. 853; Norwood v. Byrd (S. C.), 42 Am. Dec. 406; Emerick v. Kohler, 29 Barb. 165; Ritchie v. Peas, 114 Ill. 353, 3 N. E. 897; Hannon v. Hilliard, 101 Ind. 310; Jennings v. Brizeadine, 44 Mo. 332; Long v. Iron Co., 101 N. Y. 638, 4 N. E. 735. In treating the subject here under consideration, Mr. Jones says: "Nothing passes by a deed except what is described in it, whatever the intention of the parties may have been. Though parol evidence is often admissible to ascertain what lands are embraced in the description, such evidence cannot make the deed operate upon land not embraced in the descriptive words. * * * The maxim, *"Falsa demonstratio non nocet",* is not applicable unless the descriptive phrase to be suppressed is clearly repugnant to other and more important parts of the description. To justify the suppression of a part of a description, this must not only be out of harmony with other parts of the description, but it must be undeniably so, in some important respect, after putting a reasonable construction upon the rest of the

description.  *  *  *  The office of extrinsic evidence, as applied
to the description of a parcel, is to explain a latent ambiguity, or
to point out the property described on the ground.  Such evidence
must not contradict the deed, or make a description of other land
than that described in the deed.  It cannot be used to make the deed
convey land not embraced in the words used to describe the sub-
ject matter of the deed, but only to ascertain the intention of the
parties as expressed by such words.  The test of the admissibility
of such evidence is involved in the inquiry whether it tends to ex-
plain some descriptive word or expression of doubtful import con-
tained in the deed, so that the description, aided by such explana-
tion, identifies the land conveyed." 1 Jones, Real Prop. c. 18.
In the absence of anything to indicate a desire for reformation, a
deed calling for land in Minnesota cannot, in my opinion, be ex-
tended by parol evidence to embrace land in South Dakota, as
against one who has regularly acquired title since date of such in-
strument; nor does the record of such deed in this state give notice
to, or put a purchaser at an execution sale on inquiry.  Banks v.
Ammon, 27 Pa. 172; Van Thorniley v. Peters, 26 Ohio St. 471;
McLouth v. Hurt, 51 Tex. 115.  This deed, absolute in form, though
given and accepted as a mortgage, with a secret understanding be-
tween the parties that the same should be withheld from record,
for the express purpose of protecting the credit of an insolvent
grantor, but subsequently recorded in the book of deeds, certainly
fails to impart the notice contemplated by the statute, and for the
purposes of this action the same is of no validity.

　　If I am correct in this view, the case ought to be remanded
with the direction that a decree be entered quieting in appellant the
title to the premises described in his complaint.