BELL, Appellant v. MIDLAND NATIONAL LIFE INSURANCE COMPANY, Respondent

(102 N.W.2d 322)

(File No. 9707. Opinion filed April 13, 1960)

**Loucks, Oviatt & Bradshaw,** Watertown, for Plaintiff and Appellant.

**Austin & Hinderaker** and **W. A. Hackett,** Watertown, for Defendant and Respondent.

BIEGELMEIER, J. Plaintiff Bell was originally employed as actuary of defendant in 1921 and also served as director, vice president and later president continuously until March 1, 1947; by reason of some disagreement he was not then re-elected as president or actuary. He continued as a member of the Board of Directors until, under a written agreement with other Board members, he was elected in 1947 as chairman of the Board, an office created for this purpose. His compensation was fixed at $3,600 per annum

which included his services as consulting actuary. This action was ratified at the succeeding stockholders' meeting; plaintiff was annually re-elected as such chairman and served until January 31, 1951, when his employment ended. He requested he be placed on retirement pension at his attained age of 61 and be paid a pension under a Retirement Plan adopted in 1948, which was refused, resulting in this action. While it was undisputed that Bell's services were to be available to the Company in the capacity of consulting actuary as may be required by the officers and Board of Directors, the trial court found that he presided only at four quarterly meetings of the Board each year and was only consulted on two occasions as consulting actuary involving two days in proposals for the possible acquisition of other insurance companies; that he was furnished office space by defendant and that he was paid a salary of $300 a month during that time. The evidence is undisputed that plaintiff was available and consulted at other times by other officers and directors. The court further found that at the February 1948 stockholders' meeting the directors were authorized to put into effect pension and group life insurance plans for the benefit of officers, home office employees and agents; that at the February 1948 meeting of the Board of Directors the defendant adopted a Retirement Plan consisting of 21 printed pages in a book introduced in evidence as an exhibit and made a part of the findings; that after the adoption of this Plan a Council provided for by Art. 24 was appointed, held a meeting and, among other things, presented a list of employees who were eligible to be included and participate in the Plan, listing their names and past service credits (monthly retirement annuity); included in this list was the name of the plaintiff J. J. Bell and a computation of his past service credit for the monthly retirement annuity of $112.50; that these minutes were presented to the executive committee of the Board of Directors and, under authority granted by the bylaws, were approved; that the defendant-company in June 1948 began to deduct $10 a month from the $300 monthly compensation of plaintiff as his contribution to the Plan and continued so to do until February 1951 during which time defendant withheld a total of $370; that

when plaintiff's services were terminated in 1951 he requested that he be placed on a pension at age 61; that based upon his contributions under the Plan plaintiff was entitled to a present service credit referred to as future service credits in the Plan's General Description sufficient to pay a pension of $10.03 a month; that under the Plan, if plaintiff were entitled to past service credits the additional pension would be $81.28 per month. From these, and another finding hereafter adverted to, the trial court entered conclusions of law that plaintiff was entitled to the $10.03 monthly pension based on the present service credits; that there was no consideration for any agreement to establish past service credits and no amount due with reference to them; that plaintiff did not change his position in reliance upon any promise of defendant to pay a pension on past service credits. A judgment was entered in accord with the conclusions awarding a money judgment for accrued present pension credits and ordering further payments to be thereafter made by defendant of $10.03 a month. From the part of this judgment which denied the plaintiff a pension based on the past service credits plaintiff appealed. Defendant claims that:

■ A. After March 1, 1947, plaintiff was at no time a full-time employee and that the Plan provided pensions only for full-time employees. A clause of the Plan stated that the word employee did not apply to a member of the Board of Directors as such. The record shows that plaintiff was elected chairman of the Board; his compensation was fixed at $3,600 a year for which his services were also to be available to the Company as consulting actuary; that he was consulted by the officers and Board of Directors and was furnished an office during the period of from August 1, 1947, to January 31, 1951; the public financial statement of the Company listed him as an officer and director; the home office retirement Council provided for in Clause 24 of the Plan listed him as eligible to participate under the group life insurance Plan as an employee with employment of 25 years as of April 1, 1948 and a policy was issued to him as an "Employee". This policy defined an employee as "a full-time salaried employee of the Company * * * and does not in-

clude a part-time or temporary employee". This evidence requires the conclusion that plaintiff was a full-time employee employed from 1921 to 1951 except for the period of from March 1, 1947, to August 1, 1947. Defendant's second contention is as follows:

█ B. At the time the Plan was put into effect on January 1, 1948, plaintiff was not entitled to any past service credit as he had no years of continuous service completed on that date. This contention cannot be sustained. The effective date of the Plan was January, 1948; it stated that employees who had completed or shall hereafter complete two years of continuous service with the Company shall be qualified to participate in the Plan. Clearly, plaintiff met this requirement as thereafter he did complete over two years of continuous service as an employee and theretofore had completed such service and he was a full-time employee at the date the Plan went into effect. The Plan did not require two years of continuous service immediately prior to its adoption; it required only that employees be present or future full-time salaried employees with two years continuous service with which requirement plaintiff qualified. There is another reason for this conclusion. The Plan (Clause 24) created a Council to supervise and administer it with "authority and power to make binding constructions and interpretations of its provisions"; Clause 5 provided: "The Council * * * * shall in its uncontrolled discretion determine whether persons employed * * * have the qualifications of employees within the meaning of this Retirement Plan" and Clause 28 that it "be given a liberal interpretation". The court found that this Council named plaintiff as an employee eligible to participate in this Plan with a computation of past service credit for a monthly retirement annuity of $112.50, which action was approved by the Executive Committee of the Board May 10, 1958. The Council's construction of the Plan was within its provisions and purpose. The undisputed evidence and this finding show that plaintiff is entitled to the past service pension payable out of any contributions to that fund.

Being eligible to participate in the Plan and having been declared so to be by the Council, the record further shows the plaintiff continued in his employment during which time deductions among others of $10 a month were made from his salary by the treasurer of defendant-company for an item headed "Pension". This deduction was provided for in Clause 7 of the Plan. It appears that the trial court sustained an objection to admitting in evidence plaintiff's "Employee earning record" showing these facts as to plaintiff, defendant's objection being that these facts were already conceded. The evidence showed and the answer admitted that these amounts were deducted. Defendant tendered these amounts into court declaring the treasurer had no authority to deduct them. This part of the answer stated that "Plaintiff was not a full-time employee of the Defendant * * * so that he did not qualify under said Plan"; that these deductions made over an extended period should be refunded to plaintiff and tendered them back to him. The answer further stated that negotiations were taking place between plaintiff and defendant's Board of Directors looking forward to an agreement for allowance of a pension to plaintiff and these contributions were collected conditional on working out an arrangement under which past service credits would be granted plaintiff, but it was never worked out because he was never after January 1948 a full-time employee. No evidence was introduced to support this defense. As we have seen, plaintiff was a full-time employee, declared eligible to participate in the Plan and given past service credit by the Council; the only testimony as to the pension was that of plaintiff and witness Rhodes. Plaintiff and Rhodes both testified they understood plaintiff was entitled to the pension the Plan would pay plaintiff; that any discussions were whether "Bramble and Bell were both entitled to more than the pension plan would give them" (Rhodes) and that "I was to receive a pension of three hundred dollars in lieu of all other pension * * * not the ordinary pension I was entitled to according to the Pension Plan" (Bell). Defendant's third contention is as follows:

C.   The Plan provided that as to past service credit the Company was under no obligation to make contributions for this additional benefit in its own uncontrolled discretion and it did not appear that the Company ever set up any reserve to fund a past service credit for plaintiff.

Defendant claims that one paragraph of Clause 18 of the Plan entitled "Additional Benefits on Account of Past Service" which states that "The Company shall be under no obligation to fulfill its intention to make contributions for this additional benefit, it being intended that such contributions may be made a such time and in such amounts as the Company in its uncontrolled discretion may determine upon" was not fulfilled by the Company and that therefore plaintiff cannot recover. Earlier in the clause it stated that the Company "contemplates making contributions to provide an annuity benefit on account of past service". Such benefit was payable only on retirement as contemplated in Clauses 10 and 11 and was computed according to an exact and detailed formula therein. The defendant-company did contribute, and in its annual statement to the State of South Dakota Insurance Commissioner it reported, the sum of $63,476 as reserves for home office and employee's pension. Plaintiff testified that a reserve of $11,267.89 would be sufficient to fund his past service credits and he had no reason to assume that it did not include his contract with the Company. Defendant conceded that the "ten dollars each month as taken out (of plaintiff's salary) was carried on the books of the company as a liability reserve for employees' pensions and and carried in that account".

Plaintiff's action here is bottomed on contract. Clause 28 states "This Retirement Plan shall be regarded and construed as a contract between the Company and each employee * * *". Hughes v. Encyclopedia Britannica, 1 Ill.App.2d 514, 117 N.E.2d 880, 881, 42 A.L.R.2d 456, cited by defendant differs in that respect for there the Plan contained the section that it was voluntary and "it shall not be construed as creating a contractual relationship between the Company and an eligible employee * * *".

The court there held that the Plan was either an unenforceable gratuity or if contractual, unenforceable by its express terms. It is our opinion that here the relationship is contractual as to past service credit. That being so, plaintiff must show not only that he is a person legally eligible for benefits under the pension Plan but that the employer is legally responsible to pay the benefits or there is some fund out of which he can legally require payment. The trial court found:

> "(10) That it did not appear from the evidence that the Defendant ever set up on its books any reserve for the liability for the company's contribution toward a present service credit for the said Plaintiff, and it did not appear that the company ever set up any reserve liability to fund any past service credit for the Plaintiff."

At the trial, defendant's counsel stated "it is conceded * * * that there was a deduction made each month of ten dollars for his contribution to the pension plan. * * * (this) was carried on the books of the company as a liability reserve for employees' pensions and carried in that account." Defendant could either contribute or establish an adequate reserve to fulfill its obligations under Clauses 6 and 8, or its intentions under Clause 18. Its annual statements showed the pension reserve for 1948 as $63,476. Concededly this included plaintiff's share of the present pension fund. Having limited this finding by the clauses "for the Plaintiff" can it be justified? That is, we inquire did the court admit the existence of such reserves or funds generally but conclude that it was not shown that they were contributed for plaintiff's benefit? As to the present pension fund, defendant was bound by the Plan to so contribute. As to the past service pension fund another paragraph of Clause 18 states:

> "Contributions made by the Company to provide this benefit shall, to the extent possible, be used and applied to guarantee benefits to retiring

employees in the order of their retirement, even though it may appear at such time that the total contributions available are not adequate to assure benefits for all potentially qualified persons. In event a retirement should occur at a time when the amount of such contributions is insufficient to provide in whole or in part the contemplated benefit, subsequent contributions shall be first applied to satisfy all requirements of such benefit as of the date such retirement occurred."

According to Ex. 4 the Council declared at least 22 persons eligible to past service credits. All contributions to that fund were to be "applied to satisfy all requirements of such benefit as of the date such retirement occurred." The Company could not earmark or in any manner segregate contributions to that fund or reserves in it to prefer others, or defeat or delay plaintiff of his rights therein.

Plaintiff has priority thereto as of January 31, 1951 and this priority applies to funds therein or thereafter contributed. From the wording of the findings, the trial judge may have concluded that, contrary to the Plan, such reserves or contributions had to be made particularly for plaintiff or could be made for others in preference to him. Under the quoted paragraph this cannot be done. In this connection we note the defendant made an extended offer of proof by his witness Menge that while he set up reserves for pension for others, he did not set up any for plaintiff, one reason being the "break in the chain of his employment" and that other records would show no reserve was ever set up for Mr. Bell personally; no such records were shown. As we have seen, defendant was bound by the decision of the Council and, for other reasons given here, could not prevent plaintiff from sharing in any past service contributions. The complaint asked, and the court in addition to the money judgment ordered, that defendant pay plaintiff a pension each month during his lifetime. In form this was partly a declaratory judgment. At the retrial, upon an appropriate record, the judgment

may declare priority rights of plaintiff in accordance with the evidence and the Plan here construed.

█ Plaintiff's proposed a finding of fact that he was a full-time salaried employee from 1921 to January 31, 1951, except the five months of 1947. The court made no finding as to this, except Finding No. 5 which indicates partial employment only and conclusion of law No. 3 hereafter noted. A failure to make a finding on a disputed material issue requires a reversal of a judgment. Craigo v. Craigo, 22 S.D. 417, 118 N.W. 712.

█ We now turn to the trial court's conclusion of law that there was no consideration for any agreement to establish past service credits and no amount was due with reference thereto. The facts do not support this conclusion. Clause 18 also stated:

"This additional benefit shall only be available to persons otherwise eligible for it who accept this retirement plan on or before July 1, 1948 and who continue thereunder as contributing employees until retirement  *  *  *".

Plaintiff did continue under the Plan as a contributing employee by accepting his salary less the contribution to to the pension Plan deducted as provided by Clause 7. This was sufficient consideration for the contract and it is unnecessary to consider the authorities cited on promissory estoppel, see note 42 A.L.R.2d 461, or the action of the Council and plaintiff's reliance thereon.

█ Defendant asserts that the statute of limitations, SDC Supp. 33.0232(6) (e) bars recovery of part of plaintiff's claim. This subsection requires that civil actions for wages can be commenced only within two years after the cause of action shall have accrued. Wages are defined in Webster's New International Dictonary as pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees. A pension is defined as an allowance in consideration of past services. In Passaic Nat. Bank & Trust Co. v. Eelman, 116 N.J.L. 279, 183 A. 677, 678, holding a public pension was within the terms, wages, debts,

earnings, salary, income from trust funds or profits due or to become due the judgment debtor so as to be reached by execution, the court said: "While a pension is neither 'wages, earnings, salary or profits,' within the common acceptation and usage of those terms, the pension installments * * * are classable as 'debts,' within the intendment of the statute". In SDC 65.0202(7) the legislative intent is declared that "Words used are to be understood in their ordinary sense * *" The trial court was correct in concluding that the two-year statute had no application to pensions.

For the error in the findings and conclusions of law, that part of the judgment appealed from is reversed.

All the Judges concur.