KIRKEBY, Respondent v. RENAAS, Appellant

(186 N.W.2d 513)

(File No. 10841. Opinion filed April 30, 1971)

Rehearing denied June 7, 1971.

**Arneson & Issenhuth,** Madison, for plaintiff and respondent.

**Lammers & Lammers,** Madison, for defendant and appellant.

BIEGELMEIER, Judge.

The complaint in this action alleged that on July 26, 1967, plaintiff sold and delivered to defendant at his request 10 Silver Platter Cattle Feeders for which defendant promised to pay $3,209.98 of which $2,500 cash had been paid and a credit for returned goods of $7.50 left defendant indebted for a balance of $702.08.

Defendant's answer was a general denial except defendant admitted the sale and delivery of the feeders and alleged payment had been made in full. Trial by jury was waived. The action was tried by the court after which findings of fact, conclusions of law and a judgment for plaintiff in the sum of $702.48 and interest were entered. Defendant proposed findings and conclusions, which the court denied, and objected to those proposed by plaintiff and entered by the court.

It appears defendant conceived an idea for a cattle feeder and made a rough working model which he used on his farm; he approached plaintiff, a machinist and manufacturer, with a proposal that he manufacture and construct a model for display and demonstration which plaintiff did. Thereafter defendant asked plaintiff the cost of making 10 of the units. Plaintiff got quotations of castings from a foundry and prepared and delivered Ex. 7 to defendant before he started to manufacture the units. This exhibit, in plaintiff's handwriting, consists of three sheets of paper on which the parts

required are listed in detail with plaintiff's charges noted for the spool, frame, etc. on the first two sheets. These are carried over to the third sheet titled "Net Cost on Comp Unit" which plaintiff testified was net cost of complete unit. It then carried the cost of parts on the two prior sheets as "All Parts less Clutches & Forks 144.80" and added the costs of these to a total titled "Net Comp $152.14". The next two lines read "Labor Plus Spoiled Parts & Paint 100.00" and "Net Mfg Factory Cost 252.14".

Thereafter it was decided to go ahead and build the 10 units. Plaintiff notified defendant when they were finished and when he arrived to pick them up July 26, 1967 plaintiff presented defendant with Ex. 4, an invoice for $3,209.98 not itemized, but stated it was his account to date including the 10 units plus a miscellaneous open account. There was some conversation after which defendant gave plaintiff a check for $2,500. Plaintaiff subtracted this on defendant's copy leaving a balance of $709.98 and asked defendant to sign the invoice which he did. Exhibit 8, defendant's check for $2,500, had printed across the front thereof the following:

"This check is in payment of items as per statement following. Endorsement of payee will constitute a receipt in full when check is paid".

Thereunder was written by defendant in longhand:

"10 Units for Silver platter feeder 2500.00."

Plaintiff endorsed this check and received payment thereof. As is common in actions tried to the court, considerable oral testimony of conversations was admitted, much of it over objection.

Defendant's brief poses the question "Can Exhibits 7 (the itemized sheets prepared by plaintiff as net cost) and 8 (his check with the printed notation of payment in full) be changed and altered by parol evidence", contends they may not and therefore plaintiff has been paid in full. SDCL 20-7-4 and many authorities are cited on accord and satisfaction.

Plaintiff argues oral testimony was admissible to explain Ex. 7; that even if it was a binding contract in writing, un-

der SDCL 53-8-7, it was subject to alteration in writing and when defendant signed the invoice, Ex. 4, that was a new, superseding and final written memorial of the transaction and the findings of fact are valid, full and complete. We assume the last statement to be a claim the findings support plaintiff's theories. In our opinion, they do not.

Contracts are either express or implied. An express contract is one the terms of which are stated in words; an implied contract is one the existence and terms of which are manifested by conduct. SDCL 53-1-3. Plaintiff's complaint is that he sold and delivered to defendant at his request 10 cattle feeders for which defendant promised to pay $3,209.98, which alleges an express contract to pay an exact amount. There is no dispute that defendant told plaintiff to build the 10 feeders and they were delivered to him; the dispute is over the cost; defendant claimed it was to be the $252.14 per unit on Ex. 7 and, thus, $2,521.40 for the 10 units. Plaintiff contended the price per unit had never been agreed on up to July 26, 1967 when defendant came for them and they were loaded on his truck and plaintiff presented his invoice, Ex. 4, to defendant. The next day plaintiff mailed defendant an itemized statement showing the price to be $320 each or $3,200 total.

Defendant's answer alleged payment in full and his evidence supported that defense but, before that defense becomes important and the assumed issues necessary for decision, the inquiry must be what the claim of plaintiff was against which the defense of payment is to be weighed. One searches in vain in the findings for a finding that on July 26, 1967 defendant agreed to pay plaintiff either $3,209.98 for the 10 feeders as the complaint[1] alleges or $3,200 as the itemized statement, Ex. 1, and the July 17, 1967 invoice, Ex. 6, state. The findings relate evidentiary matters such as the early discussions, the loading of the units on defendant's truck, that plaintiff presented defendant with a statement for $3,209.98 of which $3,200 was for the 10 units and $9.98

---

1. As noted earlier Ex. 4, the July 26, 1967 invoice of $3,209.98, was for 10 feeder units "plus misc. open a/c".

on earlier open account (not mentioned in the complaint), that defendant gave plaintiff a check for $2,500 which plaintiff showed as a credit on the statement with a balance of $709.98 and defendant signed the invoice. The findings then (omitting duplication of amounts) recite:

"that the Defendant alleges and **claims** that the ($2,500.00) payment by him to the Plaintiff on July 26, 1967 was in full payment of all claims against him by the Plaintiff; that the Plaintiff **claims** that the amount of ($702.48), together with interest in the amount of ($49.92) * * * making a total of ($752.00), is due and owing from Defendant to Plaintiff." (Emphasis supplied)

█ There being no finding that defendant expressly "promised to pay the sum of * * * ($3209.98)" for the 10 feeders as the complaint alleged, any other express amount, or their reasonable value if that theory be permissible, the court could not conclude defendant was indebted to plaintiff in any sum. The findings must support the conclusions and judgment; they are insufficient so to do. We have not overlooked a general finding that all the material allegations of plaintiff's complaint are true and the facts contained therein have been proved by a preponderance of the evidence. If in an answer a denial of every "material" allegation of a complaint is bad and of no effect, Mead v. Pettigrew, 11 S.D. 529, 78 N. W. 945, it cannot be given any effect in a finding of fact. Important issues were whether the parties made an agreement about the time the net cost exhibit was prepared or at the time of delivery of the feeders and the fact the defendant's check had the clause that endorsement of payee would, when paid, constitute full payment for the 10 units, etc. The parties were entitled to findings on those issues.

Defendant's proposed findings that he engaged plaintiff to construct the feeders pursuant to the net cost statement and others proposed raised these issues. In some cases specific findings may well be the deciding factor of an appeal or facilitate it by making a transcript of the testimony unnecessary. Failure to make findings thereon requires a reversal of the judgment. Bell v. Midland Nat. Life Ins. Co.,

78 S.D. 349, 102 N.W.2d 322; Sabbagh v. Pro. & B'men's Life Ins. Co., 79 S.D. 615, 116 N.W.2d 513.

■ Turning now to the defense of payment absent any finding to the contrary, endorsement of the check was an acceptance of it with its agreement that it was a receipt in full when the check was paid. SDCL 20-7-4. The effect of that section, then SDC 47.0236, was considered in a recent opinion, Eberle v. McKeown, 83 S.D. 345, 159 N.W.2d 391,[2] where it was held the cashing of a check with similar wording extinguished the obligation even though it be for an amount the debtor admitted was due and needed no new consideration. No claim or evidence of duress or fraud appears. See Erck v. Bachand, 69 S.D. 330, 10 N.W.2d 518. Even assuming plaintiff's claimed conversation with defendant when the feeders were loaded, he thereafter endorsed the check with the "full payment" clause in it. Under the Eberle opinion and SDCL 20-7-4 this constituted payment in full.

The judgment is reversed with directions to dismiss the complaint.

RENTTO, P. J., and WINANS, J., concur.

HANSON, J., dissents.

WOLLMAN, J., concurs in dissent.

HANSON, Judge (dissenting).

There is a single simple issue involved in this action. Plaintiff claims defendant owes $709.98 balance on an account. Defendant contends the account has been fully paid. The resolution of this issue is entirely a matter of evidentiary credibility.

The agreement between the parties was not reduced to writing and is not free from uncertainty and ambiguity. Consequently, oral testimony was necessary to explain the transaction. The trial court observed the witnesses and heard their testimony. He determined the credibility, weight, and value of such evidence. We are bound by it.

---

2. Where our cases are reviewed.

An independent appraisal of the evidence in a light most unfavorable to the judgment and to the prevailing party must be made in order to reverse. This is not our prerogative on review.

The undisputed evidence shows that after the ten bunk cattle feeders were completed defendant came to Madison to pick them up on July 26, 1967. The ten units were accepted by defendant and loaded on his truck. Defendant issued and delivered his check to plaintiff in the amount of $2,500. As a result of the conversations that day an invoice was prepared by plaintiff showing the total account between the parties to be $3,209.98. This reflected the cost of the ten manufactured units at $320 each and a $9.98 balance on an earlier account. The $2,500 was shown as a credit leaving a balance due of $709.98. The invoice was then signed by defendant. Obviously, the trial court believed such evidence and found the sum of $709.98 still due and owing from plaintiff to defendant.

Just as obviously the trial court disbelieved defendant's testimony that the $2,500 check was in full payment and satisfaction of the account. Defendant claimed the price of the manufactured units was to be $252.14 each according to a preliminary cost estimate, marked Exhibit 7. If so, defendant should have given plaintiff a check for $2,521.40 plus $9.98 at the time he took delivery of the units in order to constitute full payment according to his own calculations. To correct this oversight defendant later sent plaintiff a check for the difference between the $2,500 credit and the amount he claimed the units should have been. This check was refused and returned by plaintiff. Such conduct does not square with defendant's contention that the $2,500 check was in full payment and satisfaction of the account.

In making payment on the account defendant used a form check which had printed thereon in small letters "Endorsement of payee will constitute a receipt in full when check is paid". The trial court did not consider this a significant evidentiary factor. We should also keep it in perspective and not assign it overriding importance in view of all

the other facts and circumstances in the case pointing to a contrary conclusion.

The findings and conclusions are sufficient. Defendant apparently knows what the trial court found and concluded. No objection was made or exception taken as to their form or sufficiency. Under the circumstances, if deemed insufficient by the majority, the case should be remitted for the entry of proper findings and conclusions. The lack of an express finding as to payment should not be made a predicate for reversal.

I would affirm.

WOLLMAN, J., concurs in this dissent.