**In the Matter of the License Revocation of William Ray HERRERA.**

**No. 15154.**

Supreme Court of South Dakota.

Considered on Briefs
March 18, 1986.

Decided Oct. 1, 1986.

Robert Mayer, Asst. Atty. Gen., Pierre, (Mark V. Meierhenry, Atty. Gen., Pierre, on the brief), for appellant State.

Ronald E. Brodowicz, Rapid City, for appellee Herrera.

PER CURIAM.

In this driver's license revocation proceeding the trial court granted the driver's motion to dismiss. The Department of Commerce and Regulation (Department) appeals. We reverse.

Around 1:30 a.m. one morning in March 1985, Rapid City Police Officer Cinda Rau heard a loud squealing of tires near where she was patroling. After driving a few blocks in various directions in an attempt to locate the vehicle, she noticed Herrera driving his auto, but was unable to determine if it was the offending vehicle. After following the vehicle several blocks she observed what she described as an "abrupt lane change." A few moments later the vehicle made a turn without signaling. Herrera also drove out of the lane of regular travel and through three to four inches of unplowed snow which had accumulated in the curbside parking spaces along the right side of the street.

Although officer Rau continued to follow Herrera and had decided to stop him, she did not immediately do so. Wishing to stop the suspect in an area with better lighting, she instead continued following petitioner as he traveled south and made an easterly turn onto a cross street divided into separate lanes of travel. As Herrera turned east he pulled into the cross street's west bound lane of travel. At approximately the time Herrera made this turn into the wrong lane, officer Rau turned on her lights, sounded her siren, and stopped petitioner. Rau claims Herrera smelled of alcohol and failed various field sobriety tests. Herrera refused to submit to a blood test. *See* SDCL 32–23–10 and 11.

The Department thereafter revoked Herrera's driver's license for one year under SDCL 32–23–11. Herrera appealed to the trial court for a trial de novo as provided under SDCL 32–23–12. After hearing Department's evidence, the trial judge granted Herrera's motion to dismiss on the grounds that Department failed to establish that Rau's stop of Herrera was supported by a reasonable suspicion that Herrera had committed a violation, as required by the Fourth Amendment.

Department apparently does not argue that the events prior to Herrera's wrong way travel—his vicinity to the squealing tires, the "abrupt lane change," failure to use his turn signals,[1] and the asserted diversion from the ordinary path of travel and through the snow drift—taken alone required the court to conclude that Rau had a reasonable suspicion to stop Herrera. *Compare, State v. Anderson*, 331 N.W.2d 568 (S.D.1983) (weaving vehicle "frequently" leaving traffic lane). Department asserts that Rau initiated her stop of Herrera after the wrong-way travel and that the trial court committed reversible error for failing to so find.

In his brief, Herrera admits he traveled the wrong way down the divided road. Apparently the trial court omitted any such finding of fact because it assumed the event was irrelevant for purposes of establishing reasonable suspicion since it had occurred after Rau's decision to stop Herrera.

 The court's failure to consider the wrong-way travel was based on an erroneous comprehension of the law. Clearly, a reasonable suspicion must exist prior to the actual *stop* of a vehicle. *E.g., Anderson, supra*. However, a reasonable suspicion need not exist prior to the officer's *decision* to effectuate the stop if no stop has yet occurred. *State v. DeSart*, 357 N.W.2d 416 (Minn.Ct.App.1984). Since it is the stopping of a vehicle and detention of its occupants which constitutes a Fourth Amendment "seizure," *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), it is that event and not the officer's initial decision to stop which must be supported by a reasonable suspicion. Thus, the wrong-way travel in this case could have supported a reasonable suspicion on which to stop Herrera.

The *DeSart* case is squarely on point. There, a Minnesota State Trooper was instructed to stop DeSart, who had done nothing to warrant such an intrusion. As the officer pursued DeSart, however, the suspect failed to signal a turn, as required by Minnesota law. The Minnesota court considered the premature decision to stop DeSart irrelevant and upheld the seizure of DeSart based on the traffic violation. We hereby adopt the *DeSart* holding.

Contrary to the trial court's assumption, this case does not turn on when the decision to stop Herrera was made. Instead, the event that has legal significance is the actual stop.[2] Rau clearly testified that the

---

1. Although officer Rau was following Herrera, the trial court found that no traffic was "endangered" or "inconvenienced" by Herrera's failure to signal. *See* SDCL 32–26–22. (Vehicle required to signal if any other vehicle "may be affected" by a turn.) As we have said, however,

the Department does not argue that the unsignaled turn supported a reasonable suspicion.

2. The *DeSart* court, 357 N.W.2d at 418, implies that the stop in that case began when the officer turned on his red lights. Although we decline to adopt any rule regarding what action initiates

stop was initiated after Herrera's wrong-way driving violation. Since Department proposed such findings, the trial court's failure to enter a finding on this decisive factual issue requires reversal of the court's decision. *Knodel v. Board of County Comm'rs*, 269 N.W.2d 386, 390 (S.D.1978); *Bell v. Midland Nat'l Life Ins. Co.*, 78 S.D. 349, 359, 102 N.W.2d 322, 327 (1960); *Craigo v. Craigo*, 22 S.D. 417, 422–23, 118 N.W. 712, 715 (1908); *Lyon v. Plankinton Bank*, 15 S.D. 400, 406, 89 N.W. 1017, 1019 (1902). *See also, State Auto. & Casualty Underwriters v. Ishmael*, 87 S.D. 49, 53, 202 N.W.2d 384, 386 (1972); *Kirkeby v. Renaas*, 85 S.D. 515, 519–20, 186 N.W.2d 513, 516 (1971).

Grant of appellee's motion to dismiss is reversed.

---

a stop, we assume, in this case, that the stop occurred when the officer turned on her lights and sounded her siren.