**James Robert HAUGE, Plaintiff and Appellee,**

v.

**Susan L. RIKKERS aka Susan L. Hauge, Defendant and Appellant.**

**No. 17052.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1990.

Decided May 1, 1991.

Richard L. Johnson, Sioux Falls, for plaintiff and appellee.

Lee R. Burd, Sioux Falls, for defendant and appellant.

WUEST, Justice.

Susan Rikkers (a/k/a Susan Hauge) appeals from the circuit court's order that her two youngest children remain in the custody of their natural father, Susan's first husband. We reverse and remand for findings of fact to support the court's order.

James and Susan Hauge were married on June 1, 1971. They had three children: Ashley, born November 8, 1971; Amy, born November 21, 1976; and Andrea, born March 27, 1983. The couple's marriage deteriorated, and in July 1987, upon the advice of a counselor, the parties attempted a trial separation. Differences remained irreconcilable and Jim commenced a divorce action in September 1987.

The two youngest children remained in Jim's custody while the divorce action was pending. Their oldest child, Ashley, remained in his care until she was placed in the custody of Threshold Youth Services[1] pending a final custody decision.

In March 1988, Jim and Susan entered into a Stipulation and Agreement, which provided in pertinent part that Susan and Jim would have joint custody of all three minor children; Jim would have primary responsibility for Amy and Andrea (the two youngest children) and they would reside with him, and Susan would have primary responsibility for and physical custody of Ashley. The couple's Decree of Divorce, entered on March 9, 1988, incorporated this custody arrangement. Susan then married Darwin Rikkers.

In April 1989, Jim moved the court for an order granting him physical custody of Ashley. In response, Susan filed a complaint to gain custody of Amy and Andrea. A hearing was held at which experts, friends and relatives testified. The testimony was extremely conflicting. Since the original custody agreement was by stipulation, the trial court followed the rule of *Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982) and *Mayer v. Mayer*, 397 N.W.2d 638 (S.D. 1986), which requires the court to determine custody based on the best interests of the children from all evidence, including that pre-dating the decree of divorce.

After the hearing, the trial court ordered that the custody arrangements remain the same; Amy and Andrea were to remain in their father's custody, and Ashley in her mother's custody.[2] Susan appeals to this court and raises three issues. We reach only the first:

I. Whether the trial court's findings of fact are insufficient as a matter of law because they entirely fail to state any reason why the best interests of Amy and Andrea are served by continuing custody in their father.

## I.

The trial court, in a memorandum decision, directed Susan's counsel to prepare Findings of Fact and Conclusions of Law consistent with the trial court's decision. However, the findings and conclusions she submitted were contrary to the court's decision and were refused. Jim's counsel[3]

---

1. Threshold Youth Services is a social services agency which assists teenagers experiencing difficulties.

2. Ashley reached the age of majority after the trial court's decision but before this appeal; thus her custody is no longer an issue.

3. Jim's appellate counsel was not counsel at the trial court level.

submitted findings and conclusions which were signed by the trial court and which incorporated the trial court's memorandum decision as the only findings of fact. The memorandum stated the decision of the trial court, but did not recite any facts to support the decision.

In awarding custody of minor children, the trial court must be guided by what appears to be the best interests of the children relative to their temporal, mental and moral welfare. SDCL 30–27–19; *Peterson v. Peterson*, 449 N.W.2d 835 (S.D. 1989); *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979); *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978). Because the findings of the trial·court failed to address the interests of the children relative to these factors, the court's findings were insufficient to form a clear basis for its conclusion. *Cf. Olson v. Olson*, 438 N.W.2d 544, 547 (S.D.1989) (insufficient findings to support separating siblings). Therefore, we agree with Susan that the findings of fact do not support the trial court's conclusion that it is in the best interests of the children to remain in Jim's custody.

We cannot find the facts on appeal, and the failure of the trial court to enter proper findings of fact constitutes reversible error. SDCL 15–6–52(a); *Olson*, 438 N.W.2d at 547; *Talbert v. Talbert*, 290 N.W.2d 862 (S.D.1980); *Kierbow v. Young*, 21 S.D. 180, 110 N.W. 116 (1906). We reverse and remand to the trial court for entry of findings of fact to support its order.

Susan filed a motion for attorney's fees and costs incurred in this appeal. The motion is ·accompanied by an itemized statement as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). We award Susan attorney's fees in the amount of $1,250.00.

Reversed and remanded.

MILLER, C.J., SABERS, J., and HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs specially.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

HENDERSON, Justice (specially concurring).

An order establishing that the father/appellee continue to have primary custody of Amy and Andrea Hauge, subject to rights of reasonable visitation in mother/appellee, which order is dated February 14, 1990, is very brief. It states, inter alia, that Findings of Fact and Conclusions were previously entered. Indeed, they were, and on February 14, 1990, also. Said Findings of Fact and Conclusions of Law are also quite brief in that (a) there is but one Finding of Fact, which incorporates the Court's Memorandum Decision and (b) the Conclusions of Law are three in number, all of which are conclusory, but the critical conclusion is contained in Roman numeral III; and said Roman numeral III again is conclusory in simply expressing that it is "The best interests of the children [are served] ..." without any specificity.

Therefore, the reviewing court must turn to the memorandum opinion of Judge Heege for *factual* findings. Said Memorandum Opinion of August 11, 1989, does set forth facts which relate to the trial judge's conscientious effort and sensitivity. It is apparent that the trial judge had weighed the evidence of several experts and lay witnesses; however, this must be translated into actual findings pertaining to the best interests of the three children. And, particularly, as the majority opinion commands, facts relating to the temporal, mental and moral welfare of the three concerned children.

I do not wish to presume the facts on this appeal nor that which the trial judge would enter below. It seems only obvious that it behooved the attorney for the prevailing party (the father/appellee) to submit findings of fact and conclusions of law to the trial judge [*]; and, surely, it should

---

[*] Appellee's counsel detailed the facts, in his client's favor, via his appellate brief. Eight pertinent Supreme Court decisions of this state were cited and three applicable state statutes. It is axiomatic, however, that this Court must have a record to review: We cannot act wisely

be done upon this remand. Findings of Fact must support the Conclusions of Law. *Knodell v. Bd. of Co. Comm'rs. of Pennington Co.*, 269 N.W.2d 386 (S.D.1978); *Kirkeby v. Renaas*, 85 S.D. 515, 186 N.W.2d 513 (1971).

Further, my reading of the trial judge's Memorandum Opinion reflects his concern that the siblings should be separated. A rationale of the "why" of it would be in order, with consideration of our decisional law.

My vote to join the majority opinion is based upon a procedural matter and not the substantive aspect of the appeal.

Each appellate judge will have his individual reaction to the value of a particular set of facts and a tendered majority opinion. It is his entitlement—nay his duty—to evaluate the ultimate work product of the tribunal upon which he sits. The therapeutic quality of a dissenting or specially concurring opinion has, throughout jurisprudential history, attained significance by improving the quality of law. Consider, as an example, what our constitutional law would be today had there been no dissents—no freedom of expression—no justice who picked up his pen because he had not the blood of controversy in his neck. Nor something to contribute, albeit by special concurrence. *See,* generally, 34 U.Chi.L. Rev. 3 (1966).

without a formal decision which tells us *why* the case was decided in favor of a certain litigant. It is written and said that law is a "seamless web." If, indeed it is, so also is the process by which law is ultimately created. Various steps and components exist in the creation of law (a decision). These components are not discrete units, each with an independent existence. More properly and with better reason, they exist solely in relation to one another. So it is with the trial courts and the Supreme Court of this state. Together, they co-exist to develop sound jurisprudence.