**Stephen R. HABICH et al., Appellants,**

v.

**Waded HUMBERT et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 24, 1969.

Richard I. McIntosh, John P. Sandidge,
Woodward, Hobson & Fulton, Louisville,
for appellants.

H. Solomon Horen, Charles Duncan,
Duncan & Lehnig, Louisville, for appel-
lees.

MILLIKEN, Judge.

The result of this appeal essentially depends on whether the trial court erred when it declined to instruct the jury on the basis of a City of Louisville ordinance regulating traffic which it concluded conflicted with a state statute.

The automobile collision involved here occurred within a "T" intersection on a clear, dry Sunday afternoon in November 1962 when traffic was light and when the plaintiff, Waded Humbert, attempted to drive her west-bound Cadillac past a Corvair heading in the same direction and operated by Stephen R. Habich, a minor sixteen years of age. The accident happened where Shelby Street intersects with and ends at the southerly line of River Road, which extends near the south bank of the Ohio River for several miles. River Road at this point is a two-way, three-lane highway whose middle lane was used weekdays as a passing lane for west-bound traffic into downtown Louisville in the morning rush hours and for east-bound traffic in the evening exodus and was properly regulated, of course, by directional traffic lights. On Sundays, activity in the area was so comparatively light even the traffic lights took the day off. The right, front section of the Cadillac and the left, front corner of the Corvair collided slightly within the intersection when the Cadillac attempted to pass in the middle lane and the Corvair started to turn left into Shelby Street from the northern or river lane of River Road. The jury rendered the plaintiff driver of the Cadillac, a verdict for $8,000 and the intervenor, Motor Leasing Company, $412.95 for damage to the Cadillac, and judgment was entered accordingly, from which the Habichs appeal.

The pertinent part of Louisville Ordinance 331.01 declares:

"Unless otherwise marked, the center lane of a three-lane street shall be used only for the purpose of passing slow moving vehicles between intersections or when a left turn is anticipated at the next intersection. *It shall be unlawful to pass through an intersection in said center lane.*" (Emphasis ours.) The pertinent statute KRS 189.340(5) declares:

(5) "Whenever any roadway has been divided into three or more clearly marked lanes for traffic the following additional rules shall apply:

"(a) A vehicle shall be driven as nearly as may be practical entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety;

"(b) A vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and the center lane is clear of traffic within a safe distance, or in preparation for a left turn or where a center lane is at the time allocated exclusively to traffic moving in the direction in which the vehicle is proceeding and is signposted to give notice of the allocation; * * *." *

It often is a close question whether ordinances and statutes in the same area conflict, as a perusal of 14 Ky. Digest, Municipal Corporations, Section 592, will disclose. See also, McQuillin, Municipal Corporations, Section 24.619; 7 Am.Jur.2d Automobiles and Highway Traffic, Sections 13 and 15; 60 C.J.S. Motor Vehicles § 23b; 37 Am.Jur. Municipal Corporations, Section 165. "Unless legislative provisions are contradictory in the sense that they can not co-exist, they are not inconsistent because of mere lack of uniformity of detail"; 37 Am.Jur. Municipal Corporations, Section 165. In that sense, we think it clear that Louisville Ordinance 331.01 and the state statute, KRS 189.340(5) conflict,

* KRS 189.340 was amended in 1962 omitting the part of the former statute prohibiting passing to the left when "traversing any intersection."

for the former prohibits passing through an intersection in the center lane while the statute, as amended in 1962, now authorizes it. An example of this principle is found in Mendel v. Dorman, 202 Ky. 29, 258 S.W. 936 (1924), in which this court held that a Louisville ordinance making a rate of speed over eight miles an hour in going around a curve or corner prima facie evidence of negligence conflicted with a state statute, and was invalid. Apparently, the Louisville ordinance had been adopted, using as a model a 1915 statute containing a similar provision, but after the local ordinance was adopted, the statute was revised, dropping the eight miles an hour limitation on curves. The court said:

"As the omission was intentional and the purpose of the statute was to cover the entire subject of vehicle regulation, it results that the former statute was repealed, and there is now no statutory provision authorizing that portion of the instruction complained of. (Instruction on duty in making turn not to operate car at more than 8 mph) * * * the ordinance in question * * * conflicts with the statute, * * *."

Both the ordinance and the statute pertain to what might be termed the "flow" of traffic on a three-lane highway. By limiting the use of the center lane by making it "unlawful to pass through an intersection in said center lane" the ordinance conflicts directly with the statute which has no such limitation, but rather states in pertinent part that a vehicle shall not be driven in the center lane except when passing on a clear highway or preparing to turn left or where a center lane is at the time allocated exclusively to traffic moving in the direction in which the vehicle is proceeding and is signposted to give notice of the allocation.

Here, the center lane was clearly available for passing. There was no intention on Mrs. Humbert's part to turn left, and the center lane was not restricted to traffic in one direction at the time because the traffic lights were off. As a result, the trial court instructed on the duties of Habich in turning and on the duties of Humbert in passing which we believe was all it should have done providing the instructions it gave were correctly stated.

The trial court's instructions imposed on defendant Habich the duty " * * * to give reasonable and timely notice of intention to make a left-hand turn, if the jury believe from the evidence that it was necessary to do so * * *" and "* * * not to turn his vehicle from a direct course on the highway unless and until such movement could be made with reasonable safety * * *", and "* * * before attempting to make a left turn into Shelby Street to give a plainly visible signal of his intention * * * if it appeared that the movement or operation of the plaintiff's automobile might reasonably be affected by the turn." The trial court futher instructed (Instruction 1(g)) that Habich was to make his left turn into Shelby Street by approaching "* * * the intersection in the center traffic lane and to make his turn *in* the traffic lane nearest the left-hand curb." (Emphasis ours.)

After imposing on the plaintiff, Humbert, the usual duties of keeping her car under control, to keep a lookout ahead, to travel at a reasonable speed, and to sound her horn if it was necessary to do so, the trial court in Instruction 2(g) instructed that she was "not to overtake and pass the defendant's (Habich's) vehicle in the center lane, unless the roadway was clearly visible and the center lane was clear to traffic within a safe distance." We think the instructions covering the duties of the plaintiff Humbert are in accord with KRS 189.340(5) with which we have concluded Ordinance 331.01 conflicts.

The defendant-appellant, Habich, contends that Instruction 1(g) requiring him to make his left turn "*in* the traffic lane nearest the left-hand curb" was erroneous. He contends that that instruction

would have required him to get over into the east-bound lane when he made his turn which, of course, would have placed him on a collision course had there been any east-bound traffic at the time. Since Instruction 1(g) in addition required the appellant, Habich, "to approach the intersection in the center traffic lane" we think that the meaning of the instruction was that Habich was to approach the intersection in the center lane and to make or complete his turn into or through the traffic lane nearest the curb—the third or east-bound lane of the highway. The use of the word "in" was unfortunate and confusing, but we believe the instruction, taken as a whole, did not mislead the jury. It would have been clearer had the court instructed that Habich, in making his left turn into Shelby Street, was to approach the intersection in the center traffic lane and to make his turn from that lane.

Appellant contends that Louisville Ordinance 331.08 governing "Left-hand Turns" conflicts with KRS 189.330(1) governing turning at intersections and no part of it should have been read to the jury. Both the ordinance and the statute require vehicles turning to the left at intersections to pass to the left of the center of the intersection, keeping as far to the right as it is possible to do and still pass to the left of the center. So far as the provision of this ordinance requiring that left turns should be made from "the traffic lane nearest the center of the roadway" is concerned, it conforms in principle to KRS 189.340(5) (b) heretofore quoted. As a consequence, we do not think it was prejudicial to have read that part of the ordinance to the jury, nor to have had an instruction partially based on the ordinance.

The verdict and judgment for the forty-year-old plaintiff was in the amount of $8,000. Her medical expenses exceeded $2,000 at the time of trial, for which no additional allowance was made, and four years after the accident there was testimony that her troubles stemming from her injuries would not stop immediately. She had a whip-lash injury to her neck and injury to her lower back together with bruises, abrasions and accompanying muscle spasms. Periodic hospitalization and many weekly treatments were required to help limit her pain and suffering. We do not consider the judgment at all excessive.

The judgment is affirmed.

All concur.