TOWNSHIP OF CASCADE v CASCADE RESOURCE
RECOVERY, INC

Docket No. 54605. Submitted October 6, 1981, at Grand Rapids.—
Decided August 23, 1982. Leave to appeal applied for.

Defendant Cascade Resource Recovery, Inc., is the lessee of land
in Cascade Township, Kent County, upon which it is construct-
ing a metal-hydroxide sludge disposal facility. The defendant
applied for and was granted a "solid waste disposal area
construction permit" from the Department of Natural Re-
sources and began construction. The township brought an
action seeking to enjoin the defendant from constructing the
facility until the defendant complied with the applicable town-
ship ordinances. The Kent Circuit Court, Robert A. Benson, J.,
granted summary judgment to defendant, holding that the
state has pre-empted the regulation of solid and hazardous
waste disposal and that the defendant cannot, therefore, be
required the adhere to the ordinances involved. The court
further held that, because the state had issued a construction
permit, the township could not prevent defendant from com-
pleting construction of the facility. The township appeals. *Held:*

1. Pre-emption occurs where: (1) state law expressly provides
for exclusive regulation by the state, (2) it is implied from
examination of legislative history, (3) it is supported by the
pervasiveness of the state regulatory scheme, or (4) the nature
of the regulated subject matter requires a uniform state regula-
tory scheme.

2. The statute applicable to the defendant in this case ex-
pressly provides for exclusive state authority to regulate the
management of hazardous waste, the comprehensiveness of the
statutory scheme indicates that the Legislature has pre-empted
the field, and the safe management and disposal of hazardous

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 822.
[2-4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 374-377.
[5, 6] 61A Am Jur 2d, Pollution Control §§ 250, 253.
[7] 2 Am Jur 2d, Administrative Law § 241.

waste is clearly an area which demands uniform, statewide treatment. Therefore, the state has pre-empted the field of hazardous waste management.

3. Defendant's facility, which was under construction at the time of the enactment of the applicable statute, is an "existing facility" within the meaning of that statute and was thus exempt from approval by a site approval board and from any local ordinances or requirements. A later amendment to the statute is not to be given retroactive effect.

Affirmed.

1. APPEAL — EQUITY — *De Novo* REVIEW.

The Court of Appeals reviews the record *de novo* in equity cases, giving due deference to the findings of the trial court, which must be sustained unless the Court of Appeals is convinced that, had it heard the evidence in the first instance, it would have been compelled to rule to the contrary.

2. MUNICIPAL CORPORATIONS — ORDINANCES — STATUTES — PRE-EMPTION.

A municipality is precluded from enacting an ordinance if the ordinance is in direct conflict with a state statutory scheme or if a state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation.

3. STATUTES — ORDINANCES — PRE-EMPTION.

Four guidelines are considered in determining whether a statutory scheme "occupies the field of regulation" and therefore pre-empts a municipal ordinance: (1) where state law expressly provides that the state's authority to regulate is to be exclusive, there is pre-emption; (2) pre-emption may be implied upon an examination of legislative history; (3) the pervasiveness of the state regulatory scheme may support a finding of pre-emption; (4) there is pre-emption if the nature of the regulated subject matter requires a uniform state regulatory scheme.

4. STATUTES — ORDINANCES — PRE-EMPTION.

Supplementary local ordinances are generally not pre-empted by a state statute where the nature of the regulated subject matter calls for regulation adapted to local conditions and where the local regulation does not interfere with the state regulatory scheme.

5. Environment — Hazardous Waste Disposal — Statutes — Pre-Emption.

> The statute controlling the disposal of hazardous waste material expressly provides that the state's authority to regulate the placement, construction, and operation of hazardous waste disposal facilities is exclusive, pre-empting supplementary local ordinances (MCL 299.521[1], 299.524, 299.532; MSA 13.30[21][1], 13.30[24], 13.30[32]).

6. Environment — Hazardous Waste Disposal — Statutes — Pre-Emption.

> The comprehensiveness of the statutory scheme controlling the management of hazardous wastes indicates that the Legislature has pre-empted the field of hazardous waste management (MCL 299.501 *et seq.;* MSA 13.30[1] *et seq.).*

7. Statutes — Judicial Construction — Administrative Agencies.

> The construction given a legislative enactment by an administrative agency charged with enforcing the statute is entitled to great weight when a court is determining the meaning of the statute, but the court is not bound by the agency's construction.

*Freihofer, Oosterhouse, DeBoer & Barnhart, P.C.,* for plaintiff.

*Richard J. Quist,* for defendant.

Amici Curiae:

Ada-Cascade Watch, Inc., Foremost Insurance Company, Thornapple Association, Inc., Cascade-Thornapple Association, John Barfuss, Gary Shoup, Tom Brower, Rosa Brower, Max Smith, William Foreman, Mary Foreman, Neil Oosterhouse, and Lavinia Oosterhouse (by *Peter W. Steketee).*

National Solid Wastes Management Association (by *Cooper & Fink).*

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and R. ROBINSON,* JJ.

D. E. HOLBROOK, JR., J. Plaintiff appeals as of right the trial court's grant of defendant's motion for summary judgment. The court declared that the state has so pre-empted the regulation of solid and hazardous waste disposal pursuant to 1978 PA 641 and 1979 PA 64, respectively, that plaintiff cannot require defendant to adhere to the ordinances involved. The trial court further ruled that plaintiff cannot prevent defendant from completing the already commenced construction of a hazardous waste disposal facility, since defendant has been issued a construction permit by the Department of Natural Resources (DNR).

Defendant is the lessee of a parcel of land in Cascade Township, Kent County. It intends to construct a metal-hydroxide sludge disposal facility thereon. In order to obtain necessary licensing for said facility, defendant originally initiated proceedings in 1977 under 1965 PA 87, the garbage and refuge disposal act, MCL 325.291 *et seq.;* MSA 14.435(1) *et seq.* (hereinafter act 87). Thereafter it shifted its theory so as to proceed under 1978 PA 641, the Solid Waste Management Act, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.* (hereinafter act 641). Defendant currently proceeds under the provisions of 1979 PA 64, the Hazardous Waste Management Act, MCL 299.501 *et seq.;* MSA 13.30(1) *et seq.* (hereinafter act 64). On September 20, 1979, the Department of Natural Resources issued defendant a "solid waste disposal area construction permit" pursuant to act 641. All parties agree that defendant would be required to obtain

* Circuit judge, sitting on the Court of Appeals by assignment.

an operating license and be guided in its operation pursuant to the provisions of act 64.[1]

Defendant commenced constructing the disposal facility in the spring of 1980, but stopped when issued a cease and desist order by the township for failure to comply with the township's zoning ordinance, waste management ordinance, and building code. Plaintiff commenced this action seeking injunctive relief to prevent defendant from constructing and operating its facility until it had complied with the township's applicable ordinances. On appeal, plaintiff raises issues related to act 641 and act 64, but only issues related to act 64 merit extensive discussion since it is dispositive of this appeal. Plaintiff argues that the court erred in ruling that act 64 has pre-empted local ordinances regulating construction of hazardous waste facilities. We disagree and affirm.

In equity cases we review the record *de novo* with due deference given to the findings of the trial court. We must sustain those findings unless convinced that, had we heard the evidence in the first instance, we would have been compelled to rule to the contrary. *Groveland Twp v Jennings,* 106 Mich App 504, 509-510; 308 NW2d 259 (1981).

The standards for determining whether a local ordinance is pre-empted by a state statutory scheme are found in *People v Llewellyn,* 401 Mich 314; 257 NW2d 902 (1977), *cert den* 435 US 1008 (1978). The Supreme Court distinguished those situations in which municipal ordinances would be pre-empted:

"A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory

---

[1] On February 18, 1982, the DNR issued an operating license to defendant pursuant to act 64.

scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." *Id.,* 322. (Footnotes omitted.)

A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits. In determining whether a statutory scheme is "occupying the field of regulation", the *Llewellyn* Court offered four independent guidelines:

"First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted. * * *

"Second, pre-emption of a field of regulation may be implied upon an examination of legislative history. * * *

"Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. * * * While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption." *Id.,* 323-324. (Citations and footnotes omitted.)

As to the fourth guideline, if the nature of the regulated subject matter calls for regulation adapted to local conditions and the local regulation does not interfere with the state regulatory scheme, supplementary local ordinances are generally allowed. However, if the court finds that the nature of the subject matter regulated calls for a uniform state regulatory scheme, supplementary local ordinances are pre-empted. *Id.,* 324-325.

The four guidelines outlined above lead us to conclude that act 64 occupies the field of hazard-

ous waste management, which defendant township seeks to enter, so as to pre-empt the field. We reach this conclusion because (1) the expressed statutory language indicates that act 64 pre-empts local ordinances; (2) the comprehensiveness of the statutory scheme shows a pre-emptive intent; and (3) the nature of the regulated subject matter demands uniform, statewide treatment.

## Express Statutory Language

The following sections of act 64 expressly provide that the state's authority to regulate hazardous waste management is to be exclusive:

"Sec. 21. (1) The board either shall approve or reject the construction permit application, and the director shall issue or deny the construction permit accordingly. The director also shall issue the permits described in the notice of intent under section 19(2). A local ordinance, permit requirement, or other requirement shall not prohibit the construction of a disposal facility." MCL 299.521(1); MSA 13.30(21)(1).

"Sec. 24. The director shall make a final decision on an operating license application within 90 days after the director receives the application. The operating license may contain stipulations specifically applicable to site and operation. A local ordinance, permit, or other requirement shall not prohibit the operation of a licensed disposal facility." MCL 299.524; MSA 13.30(24).

"Sec. 32. A municipality shall not prohibit the transportation of hazardous waste through the municipality or prevent the ingress and egress into a licensed disposal facility." MCL 299.532; MSA 13.30(32).

Despite this unambiguous language, plaintiff argues that these sections really mean that no municipality can completely exclude landfills. We reject this construction. Act 64 requires the state

to establish a statewide hazardous waste management plan. The statute also sets up a two-stage process for establishing a hazardous waste disposal area. First, a construction permit must be obtained; second, an operating license must be obtained. The three above-quoted sections prevent a municipality from independently vetoing what the state has established in its statewide plan and through the two-stage process for establishing a disposal area. Therefore, this statute expressly provides the state's authority to exclusively regulate the placement, construction, and operation of hazardous waste disposal facilities, to the exclusion of supplementary local ordinances.

### PERVASIVENESS OF STATUTORY SCHEME

As to the comprehensiveness issue, an examination of the state statutory scheme reveals a detailed plan which provides for the safe management and disposal of hazardous wastes.

In enacting act 64, the Legislature replaced the ten sections of its much simpler predecessor, act 87, with a comprehensive 51-section statutory framework designed to regulate all aspects of hazardous waste disposal.[2]

MCL 299.509; MSA 13.30(9) provides that a state hazardous waste management planning committee shall prepare a state hazardous waste management plan. The plan must provide for a reasonable geographic distribution of disposal facilities based upon location of generators, health and safety,

---

[2] The immediate predecessor of act 64 was act 641. However, both act 64 and act 641 were being considered by the Legislature at approximately the same time, at a time when act 87 was the only waste management statute. Act 641, being the first bill passed, repealed act 87. MCL 299.437; MSA 13.29(37).

economics of transporting, type of waste, and exist-ing disposal facilities.

MCL 299.518; MSA 13.30(18) provides that a person shall not establish a disposal facility with-out a construction permit.

MCL 299.522; MSA 13.30(22) provides that a person shall not conduct, manage, maintain, or operate a disposal facility without an operating license.

MCL 299.529; MSA 13.30(29) provides that a person shall not engage in the business of trans-porting hazardous waste within the state without a hazardous waste hauler's license. Subsequent sections require solid waste generators to provide a separate manifest to the hauler for each load of hazardous waste and prescribe the duties of a disposal facility owner in accepting delivery of hazardous wastes.

MCL 299.537; MSA 13.30(37) prescribes the duties of a hazardous waste generator.

MCL 299.540; MSA 13.30(40) establishes the pro-cedure for closure and post-closure monitoring and maintenance of a hazardous waste disposal area.

The comprehensiveness of this statutory scheme indicates that the Legislature has pre-empted the field of hazardous waste management. Our conclu-sion is buttressed by the numerous provisions of act 64 which are intended to strike a balance between local interests and the state's need for a uniform system of hazardous waste management.

First, two temporary positions on the site ap-

proval board are to be filled by residents of the municipality in which the disposal facility is primarily proposed to be located. MCL 299.517(2)(c); MSA 13.30(17)(2)(c). The municipalities must be notified of the receipt of a construction permit application by the DNR. MCL 299.519(1)(a); MSA 13.30(19)(1)(a). The DNR must arrange for a notice to be published in a paper having major circulation in the locality of a proposed facility. MCL 299.519(1)(b); MSA 13.30(19)(1)(b). In deciding whether to reject or approve an application, the DNR must consider the impact on the municipality where the proposed disposal facility is to be located. It must consider, among other things, local ordinances. MCL 299.520(7)(d); MSA 13.30(20)(7)(d). In considering a construction permit, the DNR must consider the concerns and objections submitted by the public. Moreover, the DNR must, to the fullest extent practicable, integrate by stipulation the provisions of the local ordinances, permits or requirements. MCL 299.520(8); MSA 13.30(20)(8).

The inclusion of local input further indicates that the Legislature has pre-empted the field. To hold otherwise could completely upset the balance between state and local interests since a municipality could veto the state's decision to issue a permit or license even though the state took the municipality's concerns into consideration.

Plaintiff argues that MCL 299.506; MSA 13.30(6) impliedly permits local ordinances by using the words "minimum requirements". This statute provides:

"After the effective date of this act, a person shall not dispose, store, or transport hazardous waste in this

state without complying with the minimum requirements of this act."

This provision refers to what a person who disposes, stores, or transports hazardous wastes must do. The unambiguous language means that the person must comply with the minimum requirements of this act, though the person may do more. It does not mean that there are more independent regulations to hurdle. Once again, such a system would disturb the balance that the statutory scheme has established.

## SUBJECT MATTER REGULATED REQUIRES STATEWIDE TREATMENT

Lastly, the safe management and disposal of hazardous wastes is clearly an area which demands uniform, statewide treatment. At present, the state is confronted with a crisis as to where to properly dispose of hazardous wastes. Previously, much of the waste was dumped illegally or improperly stored in barrels, both of which caused severe environmental damage. Michigan is extremely limited in the number of facilities that handle this waste properly. This is partly because no community wants a hazardous waste facility in its vicinity. Thus, local interests strongly want to retain their control. However, the same reasoning easily justifies state control. The Legislature recognized that hazardous waste disposal areas evoke such strong emotions in localities that the decision as to where a landfill should go should not be given to the locality, which is far more swayed by parochial interests than the state. The Legislature, instead, gave the power to a centralized decision-maker who could act uniformly and provide the

most effective means of regulating hazardous wastes.

For all the above reasons we hold that the state has pre-empted the field which plaintiff township seeks to enter.

While both parties concede that defendant's facility is exclusively regulated by act 64, plaintiff contends that defendant must still adhere to local ordinances because its construction permit was issued pursuant to act 641. Plaintiff asserts that act 641 does not pre-empt the field which plaintiff township has entered. However, it is unnecessary for us to determine the pre-emption issue in relation to act 641. On January 1, 1980, the effective date of act 64, defendant's facility came within the exclusive purview of act 64. The provisions of act 641 became inoperative in relation to defendant. The necessary authorization required of defendant under act 64 is controlled by § 16, MCL 299.516; MSA 13.30(16), which provides:

"A disposal facility in existence on the effective date of this act shall not be subject to a review of the [site approval] board except for an expansion, enlargement, or alteration of the disposal facility beyond its original authorized design capacity or beyond the area specified in the operating license, original construction permit, or other authorization."[3]

---

[3] Section 16 was amended by 1980 PA 301, effective November 19, 1980. The following language was added to the act:

"This subsection does not abridge or alter the effect of a local ordinance, permit requirement, or other requirement on the construction of a disposal facility described in this subsection."

This statutory language would change our determination of defendant's interim status under the grandfather clause. However, the amendment became effective after defendant had begun construction. We will not apply a statute retroactively, unless legislative intent therefor is clearly and unequivocally expressed. *Avon Twp v State Boundary Comm,* 96 Mich App 736; 293 NW2d 691 (1980). To give the

We note that "disposal facility in existence" is not defined in the statute. The term is defined in administrative rules promulgated pursuant to the rulemaking power contained in act 64. 1981 AACS, R 299.6102(m) provides:

" 'Existing facility' means a disposal facility that received all necessary state-issued environmental construction or operating permits before January 1, 1980. Existing facilities also include those disposal facilities which are operating before January 1, 1980, under existing authority and which do not require state-issued environmental construction or operating permits."

Although such a construction is entitled to great weight when the meaning of the statute is in doubt, that construction is not binding upon the court. *Wyandotte Savings Bank v State Banking Comm'r,* 347 Mich 33; 78 NW2d 612 (1956). Considering the labyrinth of administrative procedures that one must go through to obtain a construction permit, even under act 641, the DNR's interpretation of "existing facility" is not unreasonable. We refuse to set it aside.

On September 20, 1979, the DNR issued defendant a "solid waste disposal area construction permit" under act 641. The DNR determined that this was the only necessary state-issued environmental construction permit. Thus, defendant's facility is an existing facility for the purposes of § 16. The unambiguous language of § 16 provides that defendant need not go through the site approval board. Hence, pursuant to § 21, "a local ordinance, permit requirement, or other requirement shall not prohibit the construction of a dis-

subsequent amendment to § 16 retroactive operation would interfere with an existing construction contract and create a new liability in connection with a past transaction.

posal facility". Since act 64 pre-empts any local regulation in this field, defendant is permitted to construct the disposal facility without complying with plaintiff's local zoning ordinance, waste management ordinance, or building code requirements. The trial court did not err in its determination of this issue.

In view of the foregoing the trial court's grant of summary judgment is defendant's favor was proper.

Affirmed. No costs, a public question involved.