The PEOPLE of the State of South Dakota in the Interest of R.R., a Child, and Concerning O.R. and K.R., Respondents.

No. 16478.

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1989.

Decided Nov. 8, 1989.

Diane Best, Asst. Atty. Gen., and on brief, Roger A. Tellinghuisen, Atty. Gen., Pierre, for plaintiff and appellee.

Mary T. Wynne of Wynne & Holm, P.C., and on brief, Ted Lautenschlager of Wynne & Holm, P.C., Rapid City, for defendant and appellant.

MORGAN, Justice.

R.R., a seventeen-year-old minor female, appeals from an order adjudging her delinquent as defined by SDCL 26–8–7. The delinquency petition was based upon an underlying criminal theft by deception charge. SDCL 22–30A–3. Additionally, R.R. appeals from a dispositional order that sentenced her to serve five days in the Pennington County Jail and to pay a fine of $50.00, the execution of the fine being suspended on certain conditions. We affirm.

On May 24, 1988, Brad Booth (Booth) was employed by Sears as a private security guard at its Rapid City, South Dakota, store. Booth was also employed as a police officer with the Rapid City Police Department (Department). His employment at Sears had no connection with the Department. While employed by Sears, Booth did not coordinate his security guard actions with Department. In his employment as a private security guard, Booth was unarmed and wore a tee-shirt and blue jeans or gym shorts.

While monitoring Sears' security cameras on May 24, 1988, Booth saw R.R. walk "back and forth several times along a back wall in the store." R.R. was accompanied by an adult friend, Gloria Crowe (Crowe).

Booth watched the two women through the cameras for about ten minutes.

Then, R.R. went into the jeans section of the store and left the view of the camera for about thirty seconds. After she reappeared on the monitor, R.R. studied a section of jeans and then bent down out of sight of the camera for about twenty seconds. Until then, the jacket that R.R. was wearing was open. However, when she reappeared in the camera's sight, the bottom two buttons of her jacket were buttoned. Although R.R. was pregnant, Booth could see that R.R. looked "fatter on the side of her jean jacket." Booth also saw clothing stuck inside R.R.'s jean jacket.

Accordingly, Booth left the monitor viewing area and went out into the store to locate R.R. Although he could not immediately find her, he did see her walking out the door of the Sears store about fifteen or twenty minutes later. Booth followed R.R. and Crowe into the parking lot and caught up with both women at their car. Booth identified himself to both women as Sears security, not as a police officer. Although R.R. denied knowing anything about the jeans, Booth picked up two tags that had come off jeans and were lying in the parking lot beside the car. He also searched the car after receiving consent to do so.

Following this five-minute conversation outside the Sears store, Booth asked both women to come inside the store. He talked to them in the hallway for about three or four minutes. While standing in the hallway, Booth talked to another Sears security person and found out that R.R. had returned the jeans and received cash. This security officer was also unarmed and was casually dressed.

Based upon the information Booth obtained, he asked R.R. and Crowe to accompany him to the store's security office. Both women followed Booth to the security office, along with the other security officer, and a Sears cashier. Once in the security office, Booth placed R.R. under citizen's arrest and phoned Department on the routine police line and requested an officer

be sent, as required by SDCL 23A–4–1.* The subsequent interrogation, lasting only twenty minutes, took place in the security office. Booth used interrogation tactics he learned as a police officer, including falsely claiming that a customer had seen R.R. shoplifting. Booth did not read R.R. her *Miranda* rights at any time. R.R. confessed after fifteen or twenty minutes, admitting to putting the jeans in her jacket, taking them outside, and then returning them for a cash refund. Shortly after the confession, a police officer from Department arrived and received the prisoner. Because R.R. was a juvenile at the time she was arrested, she was charged with theft by deception within the context of a juvenile proceeding.

At R.R.'s adjudicatory hearing, R.R.'s counsel moved to suppress the confession given to Booth on the grounds that it was obtained in violation of R.R.'s privilege against self-incrimination and her right to counsel under the 5th, 6th, and 14th Amendments to the United States Constitution and under Article VI, §§ 7 and 9 of the South Dakota Constitution. The trial court found that Booth was acting as a private agent and was not required to give R.R. *Miranda* warnings. Further, the trial court found that R.R. was under no compulsion to answer, there was no force or coercion used, and that her statement was given freely, voluntarily and intelligently. The trial court denied the motion to suppress and found R.R. guilty of petty theft in the second degree. SDCL 22–30A–17. At trial, R.R.'s counsel did not raise the issue of whether Booth improperly arrested R.R. pursuant to South Dakota's citizen's arrest authority. Subsequently, R.R. was adjudicated a delinquent as a result of the trial court's finding that she committed the crime of theft by deception.

R.R. raises four issues that may be condensed into two issues:

(1) Whether a confession obtained by an off-duty police officer/private security guard, during a citizen's arrest, was properly admitted as evidence when the suspect was not advised of her constitutional rights to counsel and against self-incrimination.

(2) Whether the citizen's arrest made by an off-duty police officer/private security guard was unlawful and evidence and admissions obtained during the arrest were properly introduced into evidence.

 First we note our standard of review. Initially, the State has the burden of proving beyond a reasonable doubt that a confession or incriminating statement is freely and voluntarily made. *State v. Dubois*, 286 N.W.2d 801 (S.D.1979); *State v. Thundershield*, 83 S.D. 414, 160 N.W.2d 408 (1968). Upon appeal, this court considers the issue "in the light most favorable to support the trial court's decision." *Dubois*, 286 N.W.2d at 804. In considering whether the trial court erred, the trial court's finding of whether a statement was voluntarily given is binding on this court unless the trial court's finding is clearly erroneous. *Id.*

We turn to R.R.'s first issue. R.R. claims that Booth's use of his police training to conduct surveillance, search, arrest, and interrogation of her transformed his actions from being a private security guard to one of acting as an agent or instrumentality of the state; therefore, he should have been required to give *Miranda* warnings. The State counters that Booth was acting as a private security guard at all times and that the constitutional protections of *Miranda* only apply to actions by the government and its officials and agents, not to the acts of private individuals.

 In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966), the United States Supreme Court held that criminal defendants must be apprised of their rights to an attorney and against self-incrimination when questioning has been initiated by law enforcement officers and the person has been taken into custody or otherwise deprived of his

---

* SDCL 23A–4–1 provides, in pertinent part: "... Any other person making an arrest shall, without unnecessary delay, take the arrested person before the nearest available committing magistrate or deliver him to the nearest available law enforcement officer ..."

freedom of action in any significant way. Concomitantly, statements made to private individuals need not be preceded by *Miranda* warnings. *State v. Bruske*, 288 N.W.2d 319 (S.D.1980) (social worker not required to give *Miranda* warnings when questioning client about welfare fraud); *State v. Johnson*, 87 S.D. 43, 202 N.W.2d 132 (1972) (*Miranda* warnings not required of parole officer, because he is not acting as police agent).

While never ruling on whether an off-duty police officer/security guard must give suspects *Miranda* warnings, this court has dealt with the collateral issue of whether police officers are so steeped in governmental business that they lack the capacity to act as private citizens. In *State v. MacDonald*, 260 N.W.2d 626 (S.D.1977), this court ruled that a police officer, not engaged in pursuit of a suspect, may arrest offenders outside the territorial jurisdiction of his city so long as he acts as a private citizen pursuant to South Dakota's citizen's arrest authority. Contrary to R.R.'s contention, it is possible for a police officer to use police training as a private citizen and still remain a private citizen.

Rather than look to police training as the litmus test of state action, courts which have dealt with the private security guard issue have looked to whether the private individual acted in concert with or at the request of police authority. A brief review of some of these decisions is useful in determining whether Booth was required to give warnings. We start with the decisions requiring warnings.

In *People v. Elliott*, 131 Misc.2d 611, 501 N.Y.S.2d 265 (1986), a retired member of the New York City Police Department working as a private security guard for a hospital was dispatched to the parking lot after the report of a handgun in a car. The police had been notified before the guard was dispatched, and the guard was informed they were on their way. When he reached the car, he saw the gun and radioed this information back to his dispatcher, who in turn forwarded the information to the police. The suspect arrived shortly after this and was questioned by the guard without *Miranda* warnings. The suspect admitted the gun was his and voluntarily gave it to the guard. Subsequently, the police arrived, questioned the suspect and arrested him. The New York Court held that *Miranda* warnings should have been given because there was "coordinate private-public law enforcement involving the investigation of a crime incident. The parking lot investigation and response here, by the hospital security officer, did accommodate police objectives." *Id.* 501 N.Y.S.2d at 270.

The Alaska Supreme Court also required *Miranda* warnings in a case involving private security personnel in *Tarnef v. State*, 512 P.2d 923 (Alaska 1973). Though *Tarnef* did not involve an off-duty police officer, the facts are useful to demonstrate what a private citizen must do in order to transform his actions into those of a state agent. In *Tarnef*, a private arson investigator had agreed to turn over any statements made by the suspect to the police, had enlisted the aid of the police to gain access to an incarcerated suspect, and, after obtaining a confession, had used the police to drive himself and the suspect to different locations to confirm the confession.

Both *Elliott* and *Tarnef* are distinguishable from the case before us. Unlike the factual background in *Elliott, supra*, Booth initiated the investigation of R.R. as part of his job as a private security guard for Sears, not at the behest of Department. Department was not already responding to the incident when Booth *began* his investigation; rather, Department did not become involved until Booth called and requested that a police officer be sent, as required by SDCL 23A–4–1.

Unlike the factual background in *Tarnef, supra*, there were no pre-arrangments between Booth and Department to turn over information on R.R. to Department and Booth did not receive any special favors or extraordinary assistance from Department in the course of the investigation. In fact, Department was totally unaware of any investigation of R.R. until after her arrest.

Unlike *Elliott* and *Tarnef*, there was neither coordination of public and private investigations nor complicity between security personnel and law enforcement.

A brief review of the cases not requiring *Miranda* warnings by a private security guard is also beneficial in that they echo many of the facts before us. In *People v. Chastain*, 733 P.2d 1206 (Colo.1987), the Colorado Supreme Court held that statements made to private security guard who was a past law enforcement official and was personally associated with the Colorado Springs Police Department was not a police agent because he was not paid by a public agency or acting under the direction of a police department. Similarly, Booth was employed by Sears for his work as a security guard. At no time were his actions directed or controlled by Department.

In *State v. Bolan*, 27 Ohio St.2d 15, 271 N.E.2d 839 (1971), the Ohio Supreme Court ruled that where a security guard detained a suspected shoplifter and obtained a confession, no *Miranda* warnings were required. There, as here, the defendant argued that an Ohio statute allowing merchants to temporarily detain shoplifters (similar to SDCL 22–30A–19), gave the merchant's employee the authority to act as state agents. The court held that the statute did not place a security guard within the category of "law enforcement officer." *Id.*, 271 N.E.2d at 842.

Finally, the Michigan Supreme Court in *City of Grand Rapids v. Impens*, 414 Mich. 667, 327 N.W.2d 278 (1982), addressed this issue in the context of statements given to an off-duty sheriff from another county who was working as a private security guard. There, as here, the defendant argued that the character of the security guard's actions were what made him a government agent. The court disagreed and stated:

> Their role may be reviewed as an extension of the common law shopkeeper privilege to detain for a reasonable period of time a person suspected of theft or failure to pay. There was no complicity with the Police Department or any indication that their acts were instituted or

motivated by the police. *Id.*, 327 N.W.2d at 281.

██ We agree with the majority of state supreme courts who have dealt with this issue and found that absent coordinate action or complicity between private security guards and the police, *Miranda* warnings need not be given to a suspect. We do not believe the trial court was clearly erroneous in finding that Booth was a private citizen who was not required to give *Miranda* warnings.

With this threshold question answered, we next decide whether the confession was voluntary. R.R. argues that her confession was involuntary because Booth questioned her in a closed room, did not tell her she could leave, and used police interrogation tactics, including falsely claiming that another customer had seen her shoplift. The State argues that there is no showing that R.R.'s will was overborne.

██ A conviction which is based in whole or in part on an involuntary confession violates the defendant's rights to due process. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). If a confession is involuntarily obtained, a defendant's due process rights are violated whether the statement is taken by a private security guard or the police. *People v. Haydel*, 12 Cal.3d 190, 115 Cal.Rptr. 394, 524 P.2d 866 (1974); *Peak v. State*, 342 So.2d 98 (Fla. App.1977).

The thrust of R.R.'s argument is that because she was questioned by a security guard who was using police interrogation tactics in a closed room, her will was automatically overborne. Addressing almost identical concerns, the California Supreme Court in *In re Deborah C.*, 30 Cal.3d 125, 177 Cal.Rptr. 852, 635 P.2d 446 (1981), distinguished police interrogation from private security interrogation.

> We think that routine detention and questioning by plainclothes store detectives presents a substantially different situation. Unless they represented themselves as police they did not enjoy the psychological advantage of official

authority, a major tool of coercion.... Thus, though detentions by store personnel may at times seem frightening, the 'compelling atmosphere' that Miranda deemed inherent in a custodial interrogation by police and other government personnel appears diminished. *Id.*, 177 Cal. Rptr. at 855–56, 635 P.2d at 449–50.

■ Likewise, we do not believe Booth's police training, absent the psychological trappings of police authority, created a "compelling atmosphere." Booth was unarmed, wore casual clothing, and always identified himself as Sears security, never as a police officer. R.R. did not offer any testimony that she felt frightened or coerced. No threats were made to R.R. She confessed in a very short period of time: fifteen or twenty minutes. Her confession corroborated most of the information Sears security people had discovered. Under these facts, we do not find that the trial court was clearly erroneous in finding the confession voluntary.

Next, we address R.R.'s arguments that Booth was not licensed to be a private security guard pursuant to Rapid City requirements, that his citizen's arrest was unlawful and the evidence and admissions obtained during the arrest were improperly introduced into evidence. At trial, R.R. failed to object to a statutory restriction that misdemeanor crimes must occur in the citizen's presence before he may make a citizen's arrest. SDCL 23A–3–3. Additionally, she failed to object to a local security guard licensing requirement.

■ SDCL 23A–32–9 makes it clear that the trial court must have been afforded an opportunity to rule on a point of law by proper motion or objection before we will entertain an argument based on the court's failure to rule. *State v. Sheridan,* 383 N.W.2d 865 (S.D.1986). R.R.'s failure to raise the licensing requirement as well as the legality of the arrest so the trial court could make a ruling, waived these issues for appeal.

■ Moreover, R.R.'s issues do not qualify as the type of exceptional issues that this court has granted independent review of under the plain error rule.

SDCL 23A–44–15. The plain error rule applies only in exceptional cases and then it must be applied cautiously; the rule does not encompass every error that occurs at trial, but only those errors which are both obvious and substantial. *State v. Dornbusch,* 384 N.W.2d 682 (S.D.1986). We cannot say that violation of these statutory restrictions rises to the level of plain error.

Affirmed.

WUEST, C.J., and HENDERSON, J., concur.

SABERS and MILLER, JJ., concur in result.

SABERS, Justice (concurring in result).

I concur in the result because: "Private conduct ... may become so pervaded by governmental involvement that it loses its character as such and invokes the full panoply of constitutional protections." *People v. Ray,* 65 N.Y.2d 282, 286, 491 N.Y.S.2d 283, 285, 480 N.E.2d 1065, 1067 (1985). Such was the situation in this case.

Booth observed defendant shoplifting the blue jeans. He made a citizens' arrest and placed her in custody until an on-duty police officer arrived. Up to that point, Booth was an off-duty police officer properly acting as a Sears security guard. However, after phoning the police department, Booth put on his "On-duty police officer's hat" and began to interrogate the defendant without advising her of her *Miranda* rights. At that point, Booth's private conduct as a security guard was transformed into state action. He not only acted "in concert with the police," he *was* the police. Under the facts of this case, the connection between police and private behavior was so strong that it cannot fairly be said there was no state involvement. *See Ray, supra,* 491 N.Y.S.2d at 285, 480 N.E.2d at 1067; *People v. Elliott,* 131 Misc.2d 611, 616, 501 N.Y.S.2d 265, 269 (1986). Accordingly, this case is controlled by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See also In re Debo-*

*rah C.,* 30 Cal.3d 125, 140, 177 Cal.Rptr. 852, 860, 635 P.2d 446, 454 (1981) (Bird, C.J., concurring).

Defendant's statements were obtained from her in violation of her constitutional rights and they should have been suppressed. *Miranda, supra; see also* my writing in *State v. Meek,* 444 N.W.2d 48, 52 (S.D.1989). However, since Booth provided sufficient eyewitness testimony to sustain the conviction, the error is not reversible.

I am authorized to state that MILLER, J., joins in this special writing.