**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Catherine Julia EIDAHL, Defendant and Appellee.**

No. 17986.

Supreme Court of South Dakota.

Considered on Briefs Nov. 19, 1992.

Decided Jan. 20, 1993.

Mark Barnett, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Douglas G. Fosheim of Fosheim and Haberstick, Huron, for defendant and appellee.

AMUNDSON, Justice.

State appeals an order dismissing an information charging Catherine Eidahl (Eidahl) with one count of driving or control of a vehicle while having 0.10 percent or more of alcohol in her blood (DUI). We affirm.

FACTS

This case is once again before us after our remand in *State v. Eidahl*, 486 N.W.2d 257 (S.D.1992). The pertinent facts have not changed. At approximately 2:45 a.m.

on May 12, 1991, a police officer for the City of Huron, South Dakota, was on duty in a patrol car parked on a city street. The officer saw Eidahl's car pass by and, for no reason other than the late hour, followed Eidahl's car for approximately ten blocks. During that time, Eidahl did not speed, did not operate her car in an erratic manner and lawfully stopped at a stop sign at an intersection. However, at another intersection, Eidahl made a right turn without using a turn signal. Immediately thereafter, she made a left turn into a private driveway, again failing to use a turn signal. There was no traffic on the street at the time other than Eidahl's car and the patrol car. The police officer was about a quarter of a block behind Eidahl when she made her last two turns.

The police officer made a traffic stop because of Eidahl's failure to use a turn signal. The officer asked Eidahl if she had been drinking and Eidahl said she "had a couple." The officer then administered a series of field sobriety tests and, based upon her observations and the results of the tests, placed Eidahl under arrest for DUI.

State later filed a complaint charging Eidahl with one count of DUI. A preliminary hearing was held on June 24, 1991, and Eidahl was bound over to circuit court for trial. At a motion hearing on July 29, 1991, Eidahl made an oral motion to dismiss because the arresting officer unlawfully stopped her and interrogated her without administering the Miranda warnings. On August 7, 1991, the circuit court entered its order dismissing "the complaint and information" on the unlawful stop issue. However, no information had been filed in the case. State attempted to appeal the August 7 order of dismissal to this court. Observing that this court only has jurisdiction of appeals taken by the state when an indictment or information has been dismissed and that no information existed to be dismissed in the case, we found state's purported appeal a nullity noting, "the case remains in magistrate court wait-

ing the filing of an information or indictment by grand jury." *Eidahl*, 486 N.W.2d at 259. We directed that the circuit court orders dismissing the prosecution be vacated and remanded the matter to the magistrate court for further proceedings.

On July 2, 1992, state filed an information charging Eidahl with one count of DUI in violation of SDCL 32–23–1(1). Eidahl renewed her motion to dismiss on the basis of the unlawful stop issue and, on July 7, 1992, the circuit court entered its order once again dismissing the complaint and information. State now appeals the dismissal as a matter of right under SDCL 23A–32–4.

### ISSUE

WHETHER THE CIRCUIT COURT ERRED IN DISMISSING THE INFORMATION FILED AGAINST EIDAHL?

■ SDCL 32–14–3 provides in pertinent part: "[l]ocal authorities ... shall have no power or authority ... to enact or enforce any rule or regulation contrary to the provisions of chapters ... 32–24 to 32–34, inclusive...."

SDCL 32–26–22 provides:
The driver of any vehicle upon a highway[1] before starting, stopping, or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and *whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in § 32–26–23* plainly visible to the driver of such other vehicle of the intention to make such movement. A violation of this section is a Class 2 misdemeanor. (emphasis and footnote added).

SDCL 32–26–23 provides in pertinent part: "[t]he signal required in § 32–26–22 shall be given either by means of the hand and arm in the manner specified in § 32–26–24, or by an approved mechanical or electrical signal device ..."

*Rapid City*, 80 S.D. 180, 121 N.W.2d 21 (1963). *See also*, SDCL 31–1–1 ("highway" includes every way or place open to public for purposes of vehicular travel).

1. There is no dispute that despite the fact Eidahl was traveling on a city street, she was traveling on a "highway" as defined by South Dakota law and used in SDCL 32–26–22. *See, Hurley v.*

A Huron Municipal ordinance on use of turn signals provides in pertinent part: "[t]he driver of a vehicle *shall* give timely warning by signalling with the hand or mechanical directional signal device indicating the intention to slow up, *turn* or stop, [which] signal must be plainly visible from the rear and front of such vehicle." Huron Municipal Code § 16.12.030 (1950).

In holding that the stop of Eidahl was unlawful, the circuit court reasoned:

SDCL 32–14–3 provides that a municipality may not enact or enforce any rule or regulation contrary to the provision of Chapter 32–26. The municipal ordinance of the City of Huron is contrary to SDCL 32–26–22 and therefore I find the City has no legitimate right to have such an ordinance. I must decide this case in accordance with SDCL 32–26–22 which requires a turn signal be given whenever any other vehicle may be affected by such movement. In this case, I believe there were insufficient facts showing that the Defendant should have utilized a turn signal in the operation of her vehicle.

Under the case of *State v. Kissner*, 390 N.W.2d 58 (S.D.1986) a police officer must have a specific and articuable suspicion of a violation before the stop of a vehicle will be justified. Under these facts and circumstances I do not believe the officer had the proper basis to stop the Defendant and therefore the Defendant's Motion to Dismiss will be granted. No probable cause existed.

In short, the circuit court found the Huron ordinance on turn signals invalid as contrary to state law. Under the applicable state statute, the court ruled Eidahl's stop was unlawful because the statute did not require her to use a turn signal under the circumstances of this case. On appeal, state contends the circuit court erred in its determination that the ordinance was contrary to state law.

This court has twice addressed the issue of whether a municipal ordinance is contrary to state law. In *City of Sioux Falls v. Peterson*, 71 S.D. 446, 25 N.W.2d 556 (1946), we reviewed the validity of an ordinance on reporting traffic accidents in light of a state statute containing an identical provision. We observed:

The ordering of a dangerous traffic so as to safeguard persons and property while expediting commerce is the obvious purpose in view. The function of determining the measures to be adopted to accomplish that end is delegated to the governing body of the municipality. In such circumstances the courts will not interfere until convinced that an adopted measure is inappropriate and unreasonable. If the adopted regulation contributes substantially to the object sought to be accomplished by the grant of power, it cannot be set aside by a court as unreasonable.

*City of Sioux Falls*, 71 S.D. at 448–49, 25 N.W.2d at 557 (citations omitted). We went on to hold that the reporting requirement in the ordinance was appropriate and reasonable and, therefore, within the limits of the power delegated to the city. As for the relationship between the ordinance and the identical state statute, we concluded, "[o]bviously, this ordinance which adopts the phrasing of the statute is not in conflict therewith." *City of Sioux Falls*, 71 S.D. at 451, 25 N.W.2d at 558.

In *City of Aberdeen v. Forkel*, 72 S.D. 536, 37 N.W.2d 407 (1949), we reviewed the validity of an ordinance prohibiting operation of a motor vehicle on city streets within one year after a DWI conviction in light of state statutes containing a similar prohibition. Relying substantially on our decision in *City of Sioux Falls, supra,* we held:

Our conclusions are that the Aberdeen ordinance relates to a subject upon which the legislature has empowered municipalities to act ... and the Uniform Motor Vehicle Act, SDC 44.03, has not destroyed this power to act *because the ordinance is not contrary to the provisions of the statute.*

*City of Aberdeen*, 72 S.D. at 540–41, 37 N.W.2d at 409 (emphasis added).

As state submits, neither of the above cases provides any particular test or guidelines for determining when an ordinance is contrary to a statute. Nevertheless, it appears to be a well settled rule that, "[a] direct conflict exists when the ordinance permits what the statute prohibits *or the*

*ordinance prohibits what the statute permits."* Township of Cascade v. Cascade Resource Recovery, Inc., 118 Mich.App. 580, 325 N.W.2d 500, 502 (Mich.Ct.App. 1982) (emphasis added). *See also, Wisconsin's Environmental Decade v. D.N.R.,* 85 Wis.2d 518, 271 N.W.2d 69 (1978) (city cannot lawfully forbid what legislature has expressly authorized). *Accord,* 56 Am. Jur.2d *Municipal Corporations, Etc.* § 374 (1971) (in determining whether ordinance conflicts with statute on same subject, test is whether ordinance prohibits what statute permits or permits what statute prohibits). The authority state cites in its brief contains this same limitation. *See, Lewis v. Ford Motor Co.,* 282 N.W.2d 874 (Minn.1979) (conflict exists where ordinance forbids what statute expressly permits).

The test cited above was used by the Court of Appeals of Kentucky in determining that an ordinance prohibiting passing through an intersection in the center lane conflicted with a statute authorizing it. *Habich v. Humbert,* 446 S.W.2d 567 (Ky. 1969). The Kentucky high court observed:

> Both the ordinance and the statute pertain to what might be termed the "flow" of traffic on a three-lane highway. By limiting the use of the center lane by making it "unlawful to pass through an intersection in said center lane" the ordinance conflicts directly with the statute which has no such limitation, but rather states in pertinent part that a vehicle shall not be driven in the center lane except when passing on a clear highway or preparing to turn left or where a center lane is at the time allocated exclusively to traffic moving in the direction in which the vehicle is proceeding and is signposted to give notice of the allocation.

*Habich,* 446 S.W.2d at 569.

■ Employing a similar analysis in the instant case yields a like conclusion. Both the Huron Ordinance and SDCL 32–26–22 pertain to use of turn signals. By making it unlawful to turn without using a signal in *all* instances, the ordinance conflicts directly with the statute which has no such limitation but allows turning without use of a signal under certain circumstances (i.e., when the operation of another vehicle will not be affected by the turn). Thus, the ordinance would prohibit what the statute permits and is in conflict with the statute. This case presents an example of the precise conflict in existence. Accordingly, we find no error in the circuit court's determination that the ordinance is invalid as contrary to state law under SDCL 32–14–3.

■ State next asserts that invalidity of the Huron ordinance does not vitiate the police officer's "reasonable suspicion" to stop Eidahl's vehicle. *See, Matter of Herrera,* 393 N.W.2d 793 (S.D.1986); *Kissner, supra; State v. Anderson,* 359 N.W.2d 887 (S.D.1984); *State v. Anderson,* 331 N.W.2d 568 (S.D.1983). State urges application of a "good faith exception" to the reasonable suspicion requirement in this case. *See, United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *State v. Saiz,* 427 N.W.2d 825 (S.D.1988).

We find nothing in the settled record reflecting that this issue was advanced before the circuit court by way of argument or in the form of proposed findings of fact and conclusions of law.[2] "We have repeatedly held that the trial court must be given an opportunity to correct any claimed error before this court will review it." *State v. Mouttet,* 372 N.W.2d 121, 122 (S.D. 1985). "SDCL 23A–32–9 makes it clear that the trial court must have been afforded an opportunity to rule on a point of law by proper motion or objection before we will entertain an argument based on the court's failure to rule." *People in Interest of R.R.,* 447 N.W.2d 922, 927 (S.D.1989). Failure to raise an issue so the trial court can make a ruling waives the issue for appeal. *Id.* Therefore, we hold that state has waived its good faith argument for purposes of this appeal.

Based upon the foregoing analysis, we find no error in the circuit court's dismissal of the information filed against Eidahl.

Affirmed.

---

**2.** We note that state's counsel on appeal did not represent state in the circuit court proceedings on this matter.

HENDERSON and SABERS, JJ., concur.

MILLER, C.J., concurs specially.

WUEST, J., deeming himself disqualified, did not participate.

MILLER, Chief Justice (concurring specially).

I would like to hold that a "good faith exception" applies in this case. Obviously, at the time of the arrest there was no way for Officer Kludt to anticipate or know that this Court would ultimately hold the ordinance invalid. However, as the majority notes, this issue was not properly presented by the state's attorney to the trial court, and it has not been preserved for appeal.